DeWitt C. Blair, executor, &c., appellant,

*v.*

Charles Scribner, respondent.

[Argued March 14th, 1904.  Decided March 23d, 1905.]

Testator, by his will, bequeathed to his grandson $50,000, and directed the legacy to be paid within a year after his death, "unless I shall advance him that sum during my lifetime and take his notes therefor, in which case I direct my executor to deliver over to him any notes or obligations I may hold against him to that amount." Subsequent to the making of the will testator advanced to his grandson, from time to time, sums of money aggregating much more than the amount of the legacy, and took his notes for the various advances. A certain part of the moneys advanced was afterwards repaid by the grandson, and the testator then delivered up to him all of his notes in satisfaction or surrender of the obligations which they evidenced.—*Held*, that by the terms of the bequest the right of the grandson to be paid the legacy was made to depend, not upon the subsequent making of loans to him by the testator and the taking of his notes therefor, but upon the existence of the debt at the testator's death evidenced by the fact that the notes still remained in his possession.

On cross appeal taken by DeWitt C. Blair, executor, from decree advised by Vice-Chancellor Emery.

*Mr. George M. Shipman* and *Mr. John W. Griggs* and *Mr. William B. Hornblower* and *Mr. James Byrne* (of the New York bar), for the appellant.

*Mr. Richard V. Lindabury* and *Mr. John E. Parsons* and *Mr. John P. Wilson* (of the New York bar), for the respondent.

The opinion of the court was delivered by

Gummere, Chief-Justice.

This appeal presents for decision the true construction of the following legacy contained in the will of John I. Blair, deceased:

"I give and bequeath to my grandson, Charles Scribner, fifty thousand dollars, to be paid to him by my executor within ——— year after my death, unless I shall advance him that sum during my lifetime and take his notes therefor, in which case I direct my executor to deliver over to him any notes or obligations I may hold against him to that amount."

By the agreed state of facts submitted on the hearing in the court of chancery it appears that within three years after the making of his will Mr. Blair advanced to Charles Scribner, at different times and in different amounts, moneys aggregating $158,616, and took his notes therefor; that about a year after the making of the will Mr. Scribner, in discharge of an obligation due from him to the estate of one J. Blair Scribner, another grandson of the testator, took up a note of J. Blair Scribner's for $150,000, held by Mr. Blair, and gave to the latter his own note in its place; that from the time of giving these several notes down to June, 1892, Mr. Charles Scribner paid interest on them to Mr. Blair, and that on the latter date he paid to Mr. Blair the sum of $149,524 ($145,000 in notes of one Arthur Scribner and $4,524 in cash), and that Mr. Blair then delivered up to him all of his notes, in satisfaction or surrender of the obligation which they evidenced.

On these facts the conclusion reached by the court below was that Charles Scribner was entitled to receive from the executor, out of the assets of the testator's estate, the sum of $50,000, notwithstanding that the testator had advanced to him that amount during his (testator's) lifetime, and had taken his notes therefor, because, as the court concluded, the moneys so advanced were repaid by Charles Scribner during the lifetime of the testator, and the notes were thereupon surrendered.

It is contended, on behalf of the executor, that this conclusion is unwarranted; that Charles Scribner, by receiving a loan from the testator equal in amount to the sum named in the legacy, and giving to him notes therefor, lost his claim to the $50,000 in cash thereby bequeathed, and was entitled to nothing except the surrender of the notes; and that their delivery to him by the testator, in the latter's lifetime, was a satisfaction of the legacy.

An analysis of the clause of limitation contained in the be-

quest under consideration discloses that the testator, at the time of making this provision for the benefit of the grandson, had it in mind that he might be applied to later by his beneficiary for advances of money, and that if he should comply with such requests the advances might be made by him either as gifts or as loans. The words "advance him that sum during my lifetime *and take his notes therefor*" show this. The clause of limitation further discloses that the testator also had it in mind that if he made advances to his beneficiary by way of loan, and took his notes therefor, the loans might be paid during his (testator's) lifetime; and, on the other hand, that they might remain unpaid at his death, and the notes be found among his assets by his executor. This is to be gathered from the instruction to the executor to deliver to the beneficiary the notes which the testator might hold against him at his death. And, not only does the clause of limitation disclose that the testator had these matters in mind at the time of making this provision, but also that he then determined what effect his later action in making advances to his grandson (if he should do so) should have upon the legacy bequeathed to him. His direction to his executor to pay the amount of the legacy, even though he should afterward advance an equal amount to his grandson, *unless he should take the latter's notes therefor,* shows an intention that the legacy should not be deemed to be satisfied by an out and out gift of that sum to the grandson. So, too, his instruction that his executor should deliver over to his grandson any notes of the latter which he might hold at his death (up to the amount of the legacy) shows an intention that advances made by way of loans should satisfy the legacy if the indebtedness should remain unpaid and outstanding at the time of his death. This latter instruction further shows that the testator intended that the legacy should not be deemed to be satisfied by advances made by him, to the amount named, as temporary loans, which should afterward be repaid to him by his grandson, even though the loans should be evidenced by the notes of the borrower, for such notes would be surrendered by him when the indebtedness was paid, and could not be held by him at his death.

38

The clause of limitation, in our judgment, also discloses the effect which the testator intended such a transaction as that which is set out in the agreed state of facts should have upon the legacy. That transaction, as it appears to us, was a series of advances made by the testator to his grandson by way of loan, the giving of notes by the latter as evidences of his indebtedness, the payment of a part of the indebtedness by him and the cancellation of the unpaid portion thereof by the testator. Although it cannot be gathered from the language of the will that the testator, when he made this bequest, contemplated just such a transaction as this between his grandson and himself, yet he plainly intended, as has already been pointed out, to reserve to himself the right to *give* to his grandson, during his lifetime, such sums of money as he might see fit without impairing the right of the grandson to the legacy at his death. The final clause of the provision indicates that he intended that the method of making such gifts should be entirely within his own control; that he should be free either to make a present gift or a loan, which, at his option, he might afterward turn into a gift, if he should desire. He therefore made the test of the right of the legatee to the moneys bequeathed to him, not the making of a loan to him by the testator and the taking of notes therefor, but the existence of the debt at the testator's death, evidenced by the fact that the notes still remained in his possession.

The portion of the decree appealed from by the executor should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, PITNEY, BOGERT, VREDENBURGH, VROOM—7.

*For reversal*—DIXON, SWAYZE, GREEN—3.