D. FREDERICK BURNETT, executor of the last will and testament of Carl Berger, deceased, complainant.

*v.*

ELSE HEINRICHS, defendant.

[Decided November 22d, 1923.]

Where a testator in the fourth clause of his will gave five hundred shares of a certain stock to E., and in the fifth clause gave in trust "all the rest, residue and remainder of my estate, real and personal, whatsoever the same may be and wheresoever situated, including my stock, both common and preferred," in the same company, the bequest to E. is a specific bequest, and the language of the fifth clause of the will should be treated as if the testator had said "the *rest* of my stock, both common and preferred."

On final hearing.

*Messrs. Burnett, Sorg, Murray & Duncan,* for the complainant.

*Mr. Robert H. McCarter,* for the defendant.

BACKES, V. C.

Carl Berger owned all the outstanding capital stock, preferred and common, of the Irvington Varnish and Insulator Company. Shortly before his death he caused to be issued to himself a certificate for five hundred shares of the preferred stock, par $100, which he paid for in cash, and another for one thousand shares, for which he gave his note. This was the only preferred stock issued. The one thousand shares he pledged to a bank as security. A few weeks thereafter he made his will, and shortly afterwards died. By his will he gave as follows:

"*Third*—I give and bequeath to Olga Heinrichs, absolutely and forever, 175 shares of the present common stock of the Irvington Varnish & Insulator Co., a New Jersey corporation.

*Fourth*—I give and bequeath to Else Heinrichs, absolutely and forever, 500 shares of the preferred stock of said Irvington Varnish & Insulator Company.

*Fifth*—All the rest, residue and remainder of my estate, real and personal, whatsoever the same may be and wheresoever situated, including my stock, both common and preferred, in said Irvington Varnish & Insulator Co., I give, devise and bequeath to my trustees hereinafter named and to their heirs, successors in office, absolutely and forever, and to the survivors and survivor of them, in trust, nevertheless, to and for the following purposes only, that is to say—

*a.* To divide the *corpus* of my estate into two equal funds, one to be known as the Irmgard Trust Fund, the other as the Isolde Trust Fund.

*b.* To invest, reinvest and keep invested each of said funds in good and safe securities, retaining, so long as may be deemed advisable, the stock, both common and preferred above named, hereby fully protecting said trustees and each of them against any and all personal liability whatsoever by virtue of such retention." (Then follows a bequest of one-half of the fund to his daughter Irmgard for life, and the other half to his daughter Isolde for life, remainder over to their respective children.)

"*Seventh*—It is my suggestion, in no way, however, to be construed as a precatory trust or as mandatory or binding upon my executors and trustees * * * that none of my common stock in the Irvington Varnish & Insulator Co. shall be sold or disposed of unless, in the unanimous judgment of my executors and trustees, * * * it is essential to the best interest of my estate to sell and dispose of the same."

The executor, being of the opinion that the bequest contained in the fourth clause of the will was a specific legacy,

paid to the legatee the dividends earned and received on the five hundred shares during the first year after the testator's death. He now claims that the legacy was general, that he paid the dividends under a mutual mistaken notion of the law that the legacy was specific, and he seeks to recoup out of the dividends later declared and which he retains. The bill as framed is simply for the construction of the fourth clause of the will. Leave was given at the hearing to amend, alleging payment under a mutual mistake.

I do not find that the executor made a mistake in treating the fourth clause of the will as a specific bequest. Standing alone it would unquestionably be a general legacy, as there is nothing therein to indicate that the testator intended to give the shares of stock owned by him at the time he made his will, or that the shares he then owned were the only source from which the legacy was to be paid, and in the absence of some such indication the clause is deemed to be a direction to the executor to procure the stock or pay the equivalent out of the general funds of the estate. *Norris* v. *Thomson, 16 N. J. Eq. 218, 542; Blair* v. *Scribner, 65 N. J. Eq. 498; Ibid., 67 N. J. Eq. 583; Mecum* v. *Stoughton, 81 N. J. Eq. 319; In re United States Fidelity and Guaranty Co., 90 N. J. Eq. 254; Savings Investment and Trust Co.* v. *Crouch, 93 N. J. Eq. 311; affirmed, 118 Atl. Rep. 927.* But the language of the bequest is not controlling. The entire instrument is to be examined, and if, upon the whole, it clearly appears that the testator intended to dispose of *his* stock, the legacy will be regarded as specific. If in the clause the testator had referred to the stock as "my" or "now in my possession" or "now owned by me," or like words of identification, the bequest would have been specific according to all accepted authority. And if similar expressions are found in the rest of the will. referrable to and inclusive of the bequest, it is specific. By the fifth clause of the will he leaves the rest of his estate "including *my* stock, both common and preferred, in *said* Irvington Varnish and Insulator Company," to trustees. These parenthetically introduced words show that the testator in both the fourth and

the residuary clause was dealing with the stock owned by him. Had he used the word "rest" of my stock there could be no question that by the preceding and fourth clause he referred to the stock he then owned. And that, in substance, is what he says, viz., I give all the rest of my estate including the *rest* of my stock, both common and preferred, in *said* Irvington Varnish and Insulator Company, to my trustees. These words would be a surplusage if they meant all his stock in the company. To the contrary they indicate that the shares remaining, after those of his shares disposed of by the fourth paragraph, were to go to his trustees. It is to be observed that the only direct bequests are of stock in the company contained in the third and fourth clauses, which immediately precede the residuary clause. It seems to me when he said "including my stock," he also said excluding so much of my stock as I have already given by the third and fourth paragraphs. *Trustees of Unitarian Society* v. *Tufts, 151 Mass. 76,* involved a situation somewhat like the present one. There the question was whether the bequests were specific and had been adeemed. The opinion of Mr. Justice Holmes states the facts, in which he says:

"The legacy is of 'ten shares of the stock of the Worcester and Nashua Railroad Company.' By the fifth clause of the will the testatrix gives ten shares to another legatee, and she gives none of it to anyone else. At the time of making her will she owned twenty shares of the stock. We will assume, for the purposes of our decision, that the mere coincidence between the amount given and the amount owned would not make the legacy specific, both being round numbers. * * * Turning to the language, we find nothing conclusive in the fourth clause. The word 'the' preceding 'stock' is ambiguous, and may as well refer to the stock of the company in general as to the stock owned by the testatrix. But if 'my' were used instead of 'the' the legacy would be specific. * * * The same principle applies upon equally strong ground when a testator, after giving legacies of stock generally, gives the rest of the stock 'standing in my name.' * * * In this case the eighth clause of the will gives 'the

balance of my stock as per my stock book, my furniture and all other property not otherwise disposed of by me.' This language, taken with the facts, make it pretty plain that the stock disposed of by the testatrix in the fourth clause was stock then belonging to her; and the conclusion is fortified by the other clauses, which show that the general course which she adopted in making her will was to take up different items of her property as it then stood and to dispose of them."

There is very little comfort to be found in the authorities. Often, wherever this vexed question, whether a legacy is general or specific, has arisen, and the point was close, the courts, in an effort to do justice in the particular case, have variously rested the judgment upon the peculiar phraseology of the will or the peculiar circumstances surrounding the testator, and sometimes upon the situation of the parties seeking the relief. Some judges hold that very slight indication of intention will make specific what otherwise would be a general legacy, while, on the other hand, the court's lean against ademption, and hold that where there is danger of a legatee losing the benefit of the testator's bounty the intention must amount almost to a certainty that the bequest is specific before they will permit the legacy to be defeated. Vice-Chancellor Reed, in *Johnson* v. *Conover, 54 N. J. Eq. 333,* refers to some of the English authorities and the confusion in the decisions.

My conclusion is that by the fourth clause of the will the testator bequeathed the five hundred share of the one thousand five hundred shares of the preferred stock of the company then owned by him, and that the bequest is specific and amounted to a direction to the executors at the end of the year to set apart that number of shares of the whole possessed by him and to pay them over, together with the increments accruing from the testator's death. *Thayer* v. *Paulding, 200 Mass. 98.*