In the Matter of the Estate of ARTHUR H. LAMBORN, Deceased.

Surrogate's Court, New York County, June 26, 1939.

*Alfred C. B. McNevin*, for the petitioner.

*Pressinger & Wigg* [*Elmer E. Wigg* and *Brent W. Blythe* of counsel], for Artemas E. Ward, ancillary administrator.

*Charles Caldwell* [*Wm. R. Perkins* and *Todd Wool* of counsel], for John W. Lamborn, Arthur H. Lamborn, Richard L. Lamborn, Ruth L. Hofmann and Eleanore L. Stedman.

*Davis, Polk, Wardwell, Gardiner & Reed,* for Florence M. Lamborn.

*Root, Clark, Buckner & Ballantine,* for Gertrude H. Lamborn, individually.

*Hall, Cunningham, Jackson & Haywood* [*John H. Jackson* of counsel], for Westtown Boarding School.

*Wiley, Willcox & Sheffield,* for the Union Theological Seminary.

*Conklin & Bentley* [*William R. Conklin* and *Edward S. Bentley* of counsel], for Charles C. Riggs, Ody H. Lamborn and George L. Wright.

*Goldfarb & Fleece,* for Estelle Gross.

*William S. Sherwood,* for Henry Brady.

FOLEY, S. Certain of the issues involved in this accounting proceeding have been disposed of by the executed agreement of compromise of the parties approved by the Surrogate in his intermediate decree. (New York Law Journal, June 24th, 1939.) The remaining issues are disposed of as follows:

(1) I hold that the bequest of five hundred shares of the preferred stock under paragraph seventh of the will to David E. Lamborn, the son of the decedent, was clearly specific. The intent of the testator as expressed in the will and particularly in the paragraph involved, and the extrinsic evidence including the peculiar nature of the corporation and the fact that the stock was closely held justify this conclusion. In the first sentence of paragraph seventh the testator bequeathed to his son five hundred shares of the preferred stock of Lamborn & Company. Then followed this significant sentence which strongly characterizes the nature of the gift as specific. " This devise and bequest of the preferred stock is intended to equalize the gifts and distribution of *my property* which I have heretofore made among my other children during my lifetime." The testator at the time of his death was a resident of New Jersey and the disposition here involved and other disputes as to whether the legacies were specific or general are to be tested by the law of that state. (*Matter of Gifford,* 279 N. Y. 470, 474; Dec. Est. Law, § 47.) If the testator had died a resident of the State of New York there would not be the slightest doubt that the nature of the bequest to the son was specific. (*Matter of Security Trust Co.,* 221 N. Y. 213; *Matter of Martin,*

252 id. 582; *Matter of Mitchell,* 114 Misc. 370; *Matter of Tuck,* 171 id. 37; *Matter of Galland,* N. Y. L. J. May 4, 1938, p. 2157, affd., 255 App. Div. 839.) While the decisions in New Jersey, which must necessarily control here, do not indicate the same degree of liberality on the part of the courts of that State toward the treatment of bequests of stock and other personal property as specific in nature, I am of the opinion that a review of those cited by the contending attorneys in the present proceeding require a determination here that the legacy was specific and not general. In New Jersey, as in our own state, the primary test is the intention of the testator as expressed in the will. (*Zorner* v. *Foth,* 124 N. J. Eq. 508; 2 A. [2d] 666, citing *Wyckoff* v. *Perrine,* 37 N. J. Eq. 118.) Nor do the New Jersey decisions adhere to an arbitrary requirement that the testator should use the word " my " in describing the specific personal property which he has bequeathed in direct connection with the particular gift.

The testator here possessed at the time of the making of the will approximately four thousand shares of the preferred stock of the corporation. These shares were likewise owned by him at the time of his death. In the last sentence of paragraph seventh quoted above he referred to his intent to equalize the gifts to his children and specifically mentioned the distribution of " my property " in his plan to divide his assets upon an equitable basis. The use of the word " my " related back and characterized the gift in the same paragraph of the preferred shares to the legatee David E. Lamborn. In addition, the residuary clause of the will also made general reference to the disposition of the " rest, residue and remainder of *my estate.*" The estate of the deceased legatee, David E. Lamborn, therefore took the stock by way of a specific bequest and is entitled to the payment of all dividends which accrued upon it from the date of death. The following authorities in New Jersey sustain the conclusion reached by the Surrogate. (*Zorner* v. *Foth, supra; Kearns* v. *Kearns,* 77 N. J. Eq. 453; 76 A. 1042; *Blair* v. *Scribner,* 67 N. J. Eq. 583; 60 A. 356; *Burnett* v. *Heinrichs,* 95 N. J. Eq. 112; 122 A. 681.) The stock appears to have been changed in character because of the alteration in the corporate structure since the date of death. The present equivalent stock representing the original five hundred shares of preferred stock must be delivered to satisfy the specific bequest.

(2) I hold that the gifts of common stock of Lamborn & Company in paragraphs eighth, ninth and tenth of the will are also specific in character and that the legatees named are entitled to the payment of all dividends made since the date of death of the testator. The reasons and authorities just stated and applied to the determination of the nature of the legacy to David E. Lamborn sustain a

similar conclusion as to the legacies of the common stock covered by these succeeding paragraphs of the will. There is one difference in language because the clause of equalization of treatment of the children of the testator was necessarily not repeated in the gifts to persons other than the children in paragraphs eighth, ninth and tenth. On the other hand general evidence of intent on the part of the maker of the will to give the legacies of stock in kind is demonstrated. The testator owned at the date of the will and at his death a number of shares of the stock more than sufficient to satisfy these legacies. Moreover, the very characterization used in relation to the legacy to the son also identifies the legacies under the three succeeding paragraphs as being specific. The structure of the will and the initial specific gift of stock to the son, followed by gifts of other stock to other persons evidence a uniform and harmonious intent to treat the forms of gifts in all four paragraphs as similar in nature. In *Burnett* v. *Heinrichs*, (95 N. J. Eq. 112; 122 A. 681) the court reached a similar conclusion where separate paragraphs bequeathing shares of stock were tested by the purpose expressed in the entire instrument which furnished indication that the testator was disposing of the stock owned by him by specific bequests and not by dispositions in the nature of general legacies.

(3) The surrogate holds that the legacy to the Westtown Boarding School located in the State of Pennsylvania is valid and effective. The law of that state controls the determination of validity or invalidity of the legacy. (*Matter of Idem*, 256 App. Div. 124; affd., 280 N. Y. 756.) The school is unincorporated, but under the law of Pennsylvania a gift to an unincorporated association does not fail where the legatee is a charitable organization. (*Matter of Rathbone*, DELEHANTY, S., 170 Misc. 1030; *Lawson's Estate*, 264 Penn. St. 77; 107 A. 376; *Yard's Appeal*, 64 Penn. St. 95.) The surrogate holds upon the proof submitted that the Westtown School is a charitable institution. The courts of Pennsylvania many years ago specifically passed upon the question and so held in *Price* v. *Maxwell*, (28 Penn. St. 23). Interest on the legacy will be allowed from the customary date of presumed payment at the rate earned on the estate assets during the period of administration.

(4) The legacy to the Union Theological Seminary in the sum of one thousand dollars is valid, without the deduction of any amount for inheritance and estate tax. Interest thereon is allowed at the rate earned by the estate assets during the period of administration in accordance with the stipulation of the attorneys made upon the minutes and approved by the Surrogate.

Tax costs and submit decree construing the will and settling the account accordingly.