*In re* MANDELLE'S ESTATE.

1. WILLS—WHEN OPERATIVE.
   Will is not operative until death of maker, and then speaks intention of maker at time of its execution.

2. SAME—DEMONSTRATIVE LEGACY.
   Bequest of 1,200 shares of stock is not demonstrative legacy.

3. SAME—DEMONSTRATIVE LEGACY DEFINED.
   Demonstrative legacy is pecuniary gift with particular fund or source of means pointed out for its satisfaction.

4. SAME—INTENTION GOVERNS AS TO WHETHER LEGACY IS SPECIFIC OR GENERAL.
   Upon question of whether legacy is specific or general, intention of maker, found in any part of will or reasonably deducible from instrument considered as whole, must govern.

5. SAME—BEQUEST OF SHARES OF STOCK SPECIFIC LEGACY.
   Bequest of 1,200 par value shares of stock which testatrix owned, and which by corporate action after making of will was exchanged for 6,000 shares of no par value, is specific legacy, and legatee is entitled to the 6,000 shares together with dividends received thereon by executor after testatrix's death.

6. SAME—ADEMPTION.
   Where, after will was executed bequeathing certain par value shares of corporate stock, by corporate action over which testatrix had no control they were exchanged for shares of no par value on basis of five for one, there was no ademption.

7. SAME—DIVIDENDS FOLLOW SPECIFIC LEGACY OF STOCK.
   Dividends subsequent to death of testator on specific legacy of shares of stock follow stock.

Error to Wayne: Warner (Glenn E.), J., presiding. Submitted October 22, 1930. (Docket No. 130, Calendar No. 35,228.) Decided December 2, 1930.

Petition by Claude M. Harmon and Union Trust Company, a corporation, executors of the last will

Ascertainment of intention of testator as cardinal rule in construction of will, see annotation in 11 L. R. A. (N. S.) 67, 515; L. R. A. 1915B, 1157; L. R. A. 1915C, 653; L. R. A. 1918F, 769.

and testament of Mary S. Mandelle, deceased, for instruction. From order for distribution of certain assets in the probate court, Kalamazoo College, a Michigan corporation, and others, residuary legatees, appealed to circuit court. From judgment affirming order of probate court, residuary legatees bring error. Affirmed.

*Bulkley, Ledyard, Mills & Dickinson,* for executors.

*Corliss, Leete & Moody* (*Alexander P. Leete,* of counsel), for residuary legatees.

*Wiley, Streeter, Smith & Ford,* for specific legatee.

Wiest, C. J. Mary S. Mandelle, possessed of a large estate, died testate, August 17, 1928. In her will, executed September 10, 1923, among many other bequests, she made the following:

"In recognition of his faithful and kindly medical services to me and his contribution to science and humanity, which I wish to facilitate, I give to Charles Jack Hunt, of Mt. Vernon, New York, his heirs and assigns forever, twelve hundred (1,200) shares, par value, of the capital stock of Parke, Davis & Company, a corporation, etc., of Detroit, Michigan."

At that time testatrix owned 3,744 shares of the stock of that company of the par value of $25 each. In February, 1927, the stockholders of Parke, Davis & Company reframed its capital structure in form only, and authorized the exchange of the $25 par value shares for no par value shares in the ratio of one par value share for five no par value shares, and in March, 1927, testatrix exchanged the men-

tioned par value shares, owned by her, for the no par value shares in accord with the designated ratio, and, at her death, held the no par shares only. The executors of her estate, being in doubt whether Dr. Hunt was entitled to 6,000 shares of the no par stock (the number of shares equivalent to the 1,200 shares of par value stock), or to only 1,200 shares of the no par stock, petitioned the probate court for instruction. The probate court held that the bequest to Dr. Hunt called for 6,000 shares of the no par stock, together with dividends received upon the 6,000 shares by the executors after the death of testatrix. The residuary legatees appealed to the circuit court, and, upon affirmance there of the probate order, prosecute review here.

Attorneys for the legatees contend that the legacy is specific, while attorneys for the residuary legatees say it is general, and attorneys for the executors think it demonstrative.

If the legacy is general, then the legatee takes 1,200 shares of the no par stock and may not participate in any accruals thereon during the course of administration. If the legacy is specific, then the legatee takes 6,000 shares of the no par stock, with all accruals since the death of testatrix.

Appellants argue that the will speaks as of the date of death of testatrix. It is not expressive of the whole subject to say that a will speaks as of the date of the death of the maker. It is more accurate to say that a will is not operative until the death of the maker, and then speaks the intention of the maker at the time of its execution. It has been held that:

"As to specific legacies, the will speaks as of the time of its execution."

*In re Bradley's Estate,* 194 N. Y. Supp. 888, citing *Matter of Delaney's Will,* 133 App. Div. 409 (117 N. Y. Supp. 838), affirmed 196 N. Y. 530 (89 N. E. 1098).

The legacy is either specific or general. It is not a demonstrative legacy. Briefly stated, a demonstrative legacy is a pecuniary gift with a particular fund or source of means pointed out for its satisfaction. We think testatrix intended something more, in specifying the shares of stock bequeathed, than to point them out as a mere yardstick with which to measure a pecuniary gift. Upon the question of whether the legacy is specific or general, there exists certain general rules all, however, recognizing that the intention of the maker, found in any part of the will or reasonably deducible from the instrument, considered as a whole, must govern construction.

It is said, in behalf of appellants, that specific legacies are not favored. The main reason for this is the peril of ademption, and not that the courts frown thereon. Our attention has been directed to many English and American cases. Without reviewing the cases, we will state our conclusions, together with applicable authority. ·

It was stated in *Burnett* v. *Heinrichs,* 95 N. J. Eq. 112 (122 Atl. 681):

"But the language of the bequest is not controlling. The entire instrument is to be examined, and if, upon the whole, it clearly appears that the testator intended to dispose of *his* stock, the legacy will be regarded as specific. If in the clause the testator had referred to the stock as 'my' or 'now in my possession' or 'now owned by me,' or like words of identification, the bequest would have been specific according to all accepted authority. And if similar

expressions are found in the rest of the will, referable to and inclusive of the bequest, it is specific.''

In the forty-second paragraph of the will testatrix declared:

''It is my express wish and desire that all of the above legacies and trust funds shall, as far as possible, be paid in stocks and bonds or other property which I may own at the time of my death.''  *   *   *

This expression of purpose is referable to every provision in the will and to the bequest to Dr. Hunt, and discloses that in making the bequest to Dr. Hunt she intended to give shares of stock then owned by her. In many other paragraphs of the will testatrix gave to the executors, in the capacity of trustees, stocks and bonds to carry out many special trust benefactions therein mentioned.

In *Gardner* v. *Viall,* 36 R. I. 436 (90 Atl. 760), it was said:

''In *Thayer* v. *Paulding, supra* (200 Mass. 98, 85 N. E. 868), where a testator, owning three hundred and seventy-five shares gave 'one hundred and twenty-five shares of the capital stock' of a corporation, on page 101 it is said: 'A very slight indication of an intention to give shares then in his ownership is sufficient to make the legacy specific in a case like this.'

''But in the present case we are not left to rely for the ascertaining of the intention of the testatrix as to the character of these legacies upon the simple fact of the identity in amount of the stock of the Brown & Sharpe Manufacturing Company owned by her when she made her will and of the amount of such stock disposed of thereby. In 'paragraph twenty-ninth,' already quoted, she says: 'I hereby declare that the legacies under this will may be paid

in money or in such bonds, stocks, mortgages or other securities not hereinbefore specifically bequeathed as I may possess at the time of my death, or partly in each.' "

In *Re Estate of Largue,* 267 Mo. 104 (183 S. W. 608), it appeared that, at the date of the execution of the will, the testatrix was the "owner and in possession of 510 shares of the capital stock of the National Bank of Commerce, St. Louis, Missouri," and that "testatrix was the owner and in possession of 510 shares of said stock at the time of her death, on October 9, 1909."

"By the provisions of said will, testatrix bequeathed to the legatees named therein 510 shares of stock in the National Bank of Commerce aforesaid. She bequeathed to appellants 318 shares of stock in said bank, as shown in paragraphs three, four and seven, of the will aforesaid. It does not appear from either the will, or the record herein, that testatrix owned any *more* than 510 shares of stock in said bank."

The court stated:

"It is insisted by respondents that the legacies to appellants called for no particular shares or particular certificates of stock; that each legacy could have been satisfied by the delivery of any shares or certificates of the requisite number; that they were in no wise identified or distinguished from the other shares of the same stock and were therefore general, and not specific legacies. The following authorities are relied upon, in support of the foregoing contention: * * *

"It is practically conceded in all the authorities cited *supra,* that if the will in controversy had said 'my stock,' or 'the stock which I own,' or had used some similar expression, the legacies granted to appellants would have been *specific.* * * *

"The third paragraph of the will with the word 'my' inserted in front of 'stock,' would have read as follows:

" 'Third. I give and bequeath to my sister, Mary M. May, of Beaver Falls, Pa., 137 shares of "my" stock of the National Bank of Commerce in Saint Louis.'

"Under the authorities heretofore cited, if each of the bequests had been written as the above, by inserting 'my' before the word 'stock,' it would have characterized the respective legacies of appellants, as *specific,* instead of general. If testator understood she was doing the very thing which the use of 'my' before 'stock' would imply, in framing said legacies, then her *intention,* if carried out, would convey to each of said legatees a specific bequest."

The court further said:

"Many of the courts of last resort in this country have broken away from the arbitrary and ironclad English rule aforesaid, and construe legacies as *specific,* when bank stock or other stock is disposed of, without the use of 'my' or similar expressions, where the will upon its face, fairly discloses the intention of testator to make a specific bequest. In support of this proposition, we call attention to the following authorities." Authorities cited.

See, also, in the *Matter of the Will of Catherine Martin,* 252 N. Y. 582 (170 N. E. 151).

We think the will, considered as a whole, shows it was the intention of testatrix to constitute her bequest in favor of Dr. Hunt a specific legacy. We think the provisions of the will individualized the shares of stock bequeathed to Dr. Hunt as stock then owned by testatrix. This brings us to the question of whether there was an ademption by reason of exchange of par value shares of stock for no par value shares. The stock was changed in name and

form only and at all times remained substantially the same thing.

In the *Matter of the Will of Catherine Martin,* *supra,* the testatrix owned 40 shares of the preferred stock of a company of the par value of $100 per share, and, before execution of the will, exchanged the 40 shares for 160 shares of preferred stock of the same company of a par value of $25 each, which she held at the time of her death. In her will she made the following bequest:

"To my sister, Mary Powley (also known as Mrs. J. H. Powley), of 1315 Third avenue, Detroit, Mich., the interest on forty shares of stock of the Niagara Falls Power Company, while she lives, and after her death the stock is to go to the Niagara Falls Memorial Hospital (par value one hundred dollars pr. share)."

It was held that the legatee took a life use and the Niagara Falls Memorial Hospital the remainder in 160 shares of the preferred stock of the Niagara Falls Power Company.

There was no ademption accomplished by taking five shares of no par stock for each share of par value stock. Testatrix did not initiate the change in form of the shares of stock; the change occurred in consequence of corporate action which she could not control. *Johns Hopkins University* v. *Uhrig,* 145 Md. 114 (125 Atl. 606). Dividends, subsequent to death of a testator, on specific legacies of shares of stock follow the stock. *Tifft* v. *Porter,* 8 N. Y. 516; *Dryden* v. *Owings,* 49 Md. 356.

The judgment is affirmed, with costs against appellants.

BUTZEL, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.