**CLEGG, Exr., et, Plaintiffs, v. LIPPOLD et, Defendants.**

Probate Court, Montgomery County.

No. 116427.   Decided March 10, 1951.

Munger & Kennedy, Dayton, for plaintiffs.

Gatch, Kleinmann, Roberts & Kuhn, Cincinnati, for defendant, The Methodist Home for the Aged.

James M. Butler, James R. Butler, Columbus, for defendant, Trustees of Ohio Wesleyan University.

Carhart & Carhart, Marion, for defendant, The Methodist Children's Home of the Ohio Annual Conference of Worthington.

Clarence P. Timmons, Decatur, Georgia.

## OPINION

By LOVE, J:

This cause came on to be heard upon the petition for a declaratory judgment brought by Edwin R. Clegg as executor and The Winters National Bank and Trust Company of Dayton, Ohio , as administrator with will annexed of the estate of Elizabeth Alice Clegg, deceased; the answers of The Methodist Home for the Aged, College Hill, Cincinnati, Ohio, Trustees of Ohio Wesleyan University, Delaware, Ohio, and The Methodist Children's Home of the Ohio Annual Conference, Worthington, Ohio; an agreed statement of facts; an additional agreed statement of facts; and briefs of counsel.

The Court is required to answer the following specific questions:

"(a) Is the stock described in said will as being stock of Sterling Products, Inc., identical with the stock of Sterling Drug, Inc.; and does such stock pass under the respective provisions of said will of Elizabeth Alice Clegg, deceased?

"(b) Do the respective legatees of said stock of American Home Products Corporation and Sterling Drug, Inc., take the number of shares as recited in said will of Elizabeth Alice Clegg, deceased, or do they take three (3) times the number of shares of American Home Products Corporation and two (2) times the number of shares of Sterling Drug, Inc., recited in said will of Elizabeth Alice Clegg, deceased?

"(c) Does the issuing of rights to subscribe as above set forth have any effect on the number of shares in the above mentioned corporations bequeathed in said will of Elizabeth Alice Clegg, deceased; and, if so, what is such effect?"

The action requires the Court to construe the will of Elizabeth Alice Clegg who died on December 16, 1949 and whose will was executed on May 5, 1943.

The provisions of the will applicable to the questions before the Court are as follows:

"ITEM FIRST: I direct that my Executor hereinafter named shall pay all my just debts, my funeral expenses and the costs and expenses of administering my estate, together with all estate and inheritance taxes, both federal and state, arising by reason of the devolution of my estate, such payments to be made, in so far as practicable, out of my moneys, bank accounts and bank deposits wheresoever situate; but I direct that, in so far as possible, the sale of my stock in corporations men-

tioned in this my will be avoided in connection with said payments." (Emphasis supplied.)

Items Second and Third make provisions in favor of the testatrix's husband, who predeceased the testatrix, and for gifts over to certain beneficiaries of real estate and certain household chattels.

The Court has eliminated from the provisions of Item Fourth any bequests which do not involve gifts of stock of Sterling Products (Incorporated) or American Home Products Corporation in view of the fact that there is no question as to the construction of these bequests. The other bequests provide for gifts in money to certain charities and gifts of stock in General Motors and Continental Can Company to named beneficiaries. The provisions of Item Fourth, after making these omissions, read as follows:

"ITEM FOURTH: In the event my said husband shall not survive me, and/or in the event my said husband and myself shall die in a common accident, I direct my Executor hereinafter named to reduce into money all of my estate, excepting so much thereof as actually passes under the bequests and devises in Item Third of this my will; and for this purpose he is authorized to sell the same at public or private sale, at such times, upon such terms and at such prices, as he may think best; provided, however, that my said Executor shall sell no part of so much of my stock as is to be distributed as hereinafter provided. And I authorize and empower my said Executor to execute and deliver such deeds and other instruments, as may be necessary or desirable to effect such sales. And the moneys left by me at my decease, the moneys realized from my property directed to be sold in this Item, and all moneys realized from my securities, together with so much of my stocks, as is to be distributed as hereinafter provided, but excepting moneys required for the payments directed to be made in Item First of this my will, I direct my Executor to pay and distribute as follows:

" * * *

"To my husband's nephew, Hubert Lippold, of Attica, Indiana, if he survive me, and my husband's niece, Josephine Keefer, of Attica, Indiana, if she survive me, each ten (10) shares of my common stock in American Home Products Corporation.

"To my husband's sister-in-law, Mrs. Druce Clegg, of La Fayette, Indiana, if she survive me, fifty (50) shares of my common stock in American Home Products Corporation; and in the event said Mrs. Druce Clegg shall not survive me, then to such of the children of my husband's brother, Hiram Morton

Clegg, late of La Fayette, Indiana, deceased, as shall survive me, said last mentioned fifty (50) shares of my common stock in American Home Products Corporation to be divided among such children in equal proportions, share and share alike, the children of any then deceased child of my husband's said brother, Hiram Morton Clegg, to take the share their parent would have received if then living."

"* * *

"To Emma Frye, of Dayton, Ohio, if she survive me, twenty-five (25) shares of my common stock in Sterling Products (Incorporated).

"To Estelle Baker, of Dayton, Ohio, if she survive me. twenty-five (25) shares of my common stock in Sterling Products (Incorporated).

"* * *

"To James C. Sallee, of Toledo, Ohio, if he survive me, twenty-five (25) shares of my common stock in Sterling Products (Incorporated); and in the event said James C. Sallee shall not survive me, then to his wife. Dora Sallee, surviving me, twenty-five (25) shares of my common stock in Sterling Products (Incorporated).

"To The Blackburn University, at Carlinville, Illinois, two hundred (200) shares of my common stock in American Home Products Corporation.

"To such of the children of my half-brother, Stephen Timmons, late of Fredonia, Kansas, deceased, as shall survive me, one hundred (100) shares of my common stock in Sterling Products (Incorporated) and one hundred (100) shares of my common stock in Continental Can Company, Inc., to be divided * * *.

"* * *

"To my friend, Ivy Bryan, of La Fayette, Indiana, if she survive me, twenty-five (25) shares of my common stock in American Home Products Corporation.

"* * *

"To the Methodist Episcopal Children's Home, at Worthington, Ohio, fifty (50) shares of my common stock in American Home Products Corporation.

"To my friend, Mrs. Bertha Seslar, of Dayton, Ohio, if she survive me, ten (10) shares of my common stock in American Home Products Corporation.

"To my friend, Hattie Vogt, of Dayton, Ohio, if she survive me, twenty-five (25) shares of my common stock in American Home Products Corporation.

"To the Methodist Home for the Aged, College Hill, Cincinnati, Ohio, one hundred (100) shares of my common stock in American Home Products Corporation.

"In the event sufficient shares of stock in Sterling Products (Incorporated), American Home Products Corporation, Continental Can Company, Inc. and General Motors Corporation, respectively, are not left by me at my death and available for making the foregoing distributions of such stocks, respectively, I direct that the stock in said respective corporations left by me at my death and available as aforesaid shall be apportioned according to the amounts of said respective legacies consisting of said respective stocks, and that in lieu of the stock not received by such legatees, they shall, if possible, receive such deficiency in money, according to the value of stock in such respective corporations at the time of my decease.

"* * *

"The rest and residue of said moneys then held by my said Executor, together with all lapsed legacies and devises, if any, shall be paid and distributed as follows: Twenty-five (25) per cent thereof to the Board of Foreign Missions of the Methodist Episcopal Church, twenty-five (25) per cent thereof to Ohio Wesleyan University, at Delaware, Ohio, and fifty (50) per cent thereof to The Blackburn University, at Carlinville, Illinois, such bequest to said The Blackburn University being in addition to the bequest to said The Blackburn University hereinbefore in this Item set forth. **I direct that should my said Executor deem it best, my said Executor may make distributions in kind of any part of my estate, instead of reducing such part to money as hereinbefore provided.**" (Emphasis supplied.)

Items Fifth, Sixth, and Seventh do not in any way relate to the questions before the Court.

As previously indicated, the parties have submitted an agreed statement of facts and an additional agreed statement of facts. Facts drawn from the aforesaid instruments are herein set forth for an understanding of the principal questions, and other facts as are necessary in reaching the decision will be set forth in the opinion below as the occasion demands.

At the time of the execution of the will, the testatrix held eight hundred (800) shares of Sterling Drug, Inc. After the June 15, 1945 stock split-up of two for one described below, she had sixteen hundred (1600) shares. The number of shares bequeathed in her will totals one hundred seventy-five (175) shares or three hundred fifty (350) shares of the exchanged stock. Thus, it is apparent that both at the time of the execution of the will and at the time of her death the testatrix held more than enough shares in Sterling Drug, Inc. to satisfy all bequests.

On June 15, 1945 Sterling Drug, Inc. issued to their stockholders, including Elizabeth Alice Clegg, two new shares in exchange for one old share to be turned in by the stockholders. This exchange was accomplished at the same time that the authorized capital stock of the corporation was changed from two million (2,000,000) shares of ten dollars ($10.00) par value per share to five million (5,000,000) shares of five dollars ($5.00) par value per share. At the same time the Corporation was authorized by the shareholders to issue one hundred twenty-five thousand (125,000) shares of preferred stock of one hundred dollars ($100.00) par value per share. The previously issued one million, eight hundred seventy-four thousand, seven hundred sixty-three (1,874,763) shares of capital stock of ten dollars ($10.00) par value were exchanged for three million, seven hundred forty-nine thousand, five hundred twenty-six (3,749,526) shares of common stock of five dollars ($5.00) par value.

On October 15, 1942 the name of the Sterling Products (Incorporated) was duly changed to Sterling Drug. Inc. It appears from the evidence that the identical business was carried on by Sterling Drug, Inc. as was previously carried on by Sterling Products (Incorporated) and that the testatrix intended to make gifts in the business presently known as Sterling Drug, Inc. The substantial identity of the business interest involved is made apparent from the fact that there are presently outstanding some certificates bearing the former corporate name. Thus, the first question posed by the plaintiff may be considered answered, particularly since there is no dispute on either the law or the facts on this point. The Court will, however, consider the second question fully in order to analyze what appears to be a matter of first impression in this State.

At the time of the execution of the will, the testatrix held thirteen hundred (1300) shares of American Home Products Corporation. After the reorganization of October 14, 1946 described below, the testatrix held three thousand nine hundred (3900) shares of American Home Products Corporation and at the time of her death she held two thousand eight hundred (2800) shares. By various bequests included in the will the testatrix bequeaths four hundred eighty (480) shares or one thousand four hundred forty (1440) if these bequests are to be distributed at a ratio of three (3) to one (1) to the number of shares mentioned in the will. The testatrix held, both at the time of the execution of the will and at the time of her death, more than enough shares of the Corporation to satisfy all bequests of this stock.

On October 14, 1946 the American Home Products Corporation issued to its stockholders, including the testatrix, two (2) new additional shares of common stock for each one (1) share then outstanding in the stockholder's name. In order to make clear the exact nature of this distribution, the Court will quote extensively from a proxy statement in regard to the distribution which was sent to the shareholders for their consideration along with a letter prior to the changes.

PROXY STATEMENT

SPECIAL MEETING OF STOCKHOLDERS

"This statement is furnished in connection with the solicitation of proxies by the Management of American Home Products Corporation (hereinafter called the 'Corporation') to be used at a Special Meeting of Stockholders of the Corporation to be held on September 19, 1946 at the office of the Corporation, No. 100 West Tenth Street, Wilmington 99, Delaware, for the purpose set forth in the accompanying Notice of Special Meeting dated August 23, 1946. A form of Proxy solicited by the Management is enclosed with this Proxy Statement. Any Proxy given pursuant to this solicitation may be revoked by the person giving it at any time before its exercise.

"AMENDMENT OF CERTIFICATE OF INCORPORATION AND MODIFICATION OF BONUS PLAN INCIDENTAL THERETO

"The authorized Capital Stock of the Corporation now consists of 1,500,000 shares of the par value of $1.00 per share, of which 1,286,195 shares are issued and outstanding after giving effect to the recent financing. The Amendment, if adopted, will increase the total number of shares which the Corporation shall have authority to issue from 1,500,000 shares, of the par value of $1.00 per share to 5,000,000 shares, of the par value of $1.00 per share. The newly authorized shares of Capital Stock will be similar in all respects to the presently authorized shares of Capital Stock of the Corporation, the only class of stock authorized. The Directors have recommended that Article FOURTH of the Certificate of Incorporation, as amended, be amended to read as follows:

" 'FOURTH: The total number of shares of stock which the Corporation shall have authority to issue is Five Million and the par value of said shares is One Dollar. The number of shares with which the Corporation shall commence business is Ten.'

"The proposed Amendment, if approved by the stockholders, will become effective upon the due filing and recording of a Certificate of Amendment in accordance with the laws of the State of Delaware. The Corporation intends to proceed with such filing and recording as soon as practicable after the approval of the proposed Amendment by the stockholders.

"The Board of Directors proposes to distribute to stockholders additional shares of authorized Capital Stock in the ratio of two additional shares for each share held, such distribution to be in the nature of a split-up of the shares. It is contemplated that for each present share held, certificates representing two additional shares of stock will be issued and mailed on or about November 1, 1946, to stockholders of record at the close of business on October 14, 1946. If the distribution had been effected on August 23, 1946, 2,572,390 shares would have been issued in connection therewith.

"Your Board of Directors deems the proposed distribution advisable in order to create a wider public participation in the shares of the Corporation. If the proposed amendment is adopted and distribution made of two additional shares for each share held, the relative rights or interests of the stockholders in the Corporation will not be changed. The proposed stock distribution will be payable out of capital surplus in accordance with the laws of the State of Delaware and the provisions of the Certificate of Incorporation of the Corporation. The aggreg[r]ate par value of the shares proposed to be issued upon the distribution will be credited to Capital Stock account and charged to Capital Surplus. Based upon the number of shares outstanding on August 23, 1946, after giving effect to the recent financing, such changes would affect the consolidated balance sheet of the Corporation, as follows:

|  | Before Giving Effect to Amendment and Proposed Distribution | After Giving Effect to Amendment and Proposed Distribution |
| --- | --- | --- |
| Capital Stock: | | |
| Authorized, Par Value $1.00 | 1,500,000 shares | 5,000,000 shares |
| Issued and Outstanding | 1,286,195 shares | 3,858,585 shares |
| Capital: | $1,286,195 | $8,858,585 |

"Note: Capital Surplus will be charged with the aggregate par value of the shares to be issued, viz. $2,572,390. Earned Surplus will not be affected.

"After giving effect to the proposed distribution there will remain 1,141,415 shares of authorized but unissued Capital Stock. The Board of Directors has no present plans for the issuance of these additional shares but it is considered advisable to authorize additional shares at this time so that they may be available for future use in connection with possible acquisitions of properties or businesses or to increase the capital of the Corporation, or for other proper corporate purposes.

"As a result of the Amendment of the Certificate of Incorporation described above and the proposed stock distribution, it will be necessary to modify the existing Bonus Plan of the Corporation to take into effect the increased number of shares of the Corporation which will be outstanding. The Bonus Plan, as approved by stockholders of the Corporation at a meeting held on April 8, 1937 contains the provision that in no event shall any bonus fund be set aside in any quarter in which the net profits applicable to dividends aggregate less than 60c per share of Capital Stock outstanding at the end of such quarter. Since, as a result of the proposed stock distribution, approximately three times the number of shares will be outstanding as are outstanding at the present time. it is necessary that the Bonus Plan be modified to provide that in no event shall any bonus fund be set aside in any quarter in which the net profits applicable to dividends aggregate less than 20c (equivalent to the present requirement of 60c) per share of Capital Stock outstanding at the end of such quarter. A copy of the Bonus Plan, containing the proposed modification, is shown below as Exhibit A.

"* * *

### "FINANCIAL STATEMENTS

"**The proposed stock distribution will not change any account on the balance sheet other than those indicated above and will have no effect on the statement of income.** The proposed change in the Bonus Plan will not in any way affect the balance sheet or income statement of the Corporation and, as stated above, the change is made merely to reflect the proposed stock distribution. Accordingly, financial statements have been omitted from this Proxy Statement since they are not deemed to be material for the exercise of prudent judgment as to the proposed change in the authorized number of shares of Capital Stock of the Corporation or the proposed change in the Bonus Plan. * * *"   (Emphasis supplied.)

Part of the agreed statement of facts is a letter dated April 13, 1950 from the American Home Products Corporation from which the following statement has been extracted as being explanatory of what the Corporation believes to be the effect of the October 14, 1946 stock issuance:

"To record the issuance of the additional shares an entry was made charging Capital Surplus and crediting Capital Stock. It therefore did not represent a distribution of accumulated earnings and profits. As a result of the issuance there was no change in the proportionate interest of the stockholders."

In order to declare rights and legal relations growing out of the second question propounded, the Court must deter-

mine the intent of the testatrix from the language used in her will; thus, for purposes of clarity and to pose the specific legal questions which the question suggests, the same will be considered in three parts as follows:

1. Is the language used in the will such as to create specific legacies?

2. If the legacies created are specific, do the changes in the forms of stock which occurred prior to the death of the testatrix work a partial ademption?

3. Did the testatrix intend to make a bequest of the shares of the stock of the corporations in the form in which they existed at the time of the execution of the will or in the form in which they existed at the time of her death?

It is believed that, if these questions can be answered, the declaratory question "(b)" propounded by plaintiff will be resolved.

A bequest of a designated number of shares in a corporation is normally considered to be a general legacy. However, by apt language the testatrix may refer to shares of stock as forming a part of her estate and thus render the bequest specific.

"The expression of ownership of property by such words as 'my,' 'in my possession,' 'owned by me,' 'standing in my name,' 'which I now hold,' is a well-defined indication that a bequest of that property is a specific legacy."

**41 O. Jur., Wills, Section 755, page 872.**

It is stated by Holmes, J. in **Harvard Unitarian Society v. Tufts, 151 Mass. 76, 78; 23 N. E. 1006 (1890)**:

"But if 'my' were used instead of 'the,' the legacy would be specific."

Also see **Metcalf v. Framingham Parish, 128 Mass. 370 (1880)**; 11 L. R. A. (NS) 79; Page on Wills, Lifetime Edition, Vol. 4, Sec. 1397, page 122.

It is only necessary to point out that testatrix used "of my common stock" in reference to the number of shares of Sterling Products (Incorporated) and American Home Products Corporation bequeathed to legatees fifteen times in Item Fourth.

The construction of the bequests in this will as specific legacies by application of this rule of law is further reinforced in this case by (1) the language in Item First directing that the sale of stock in corporations mentioned in the will be avoided in providing for payment of taxes; (2) the language in Item Fourth which excepts from the powers of sale given to the executor "so much of my stock as is to be distributed as hereinafter provided"; and (3) the language in the latter part

of Item Fourth which provides for an alternative provision for money in lieu of the stocks specifically bequeathed. Thus, by apt language, the testatrix apparently recognized the rule of law that a specific legacy would be adeemed if the items bequeathed were not in the possession of the testatrix at the time of her death. It should be noted, however, that the provisions of this alternative clause are of little value in disposing of the questions raised by the present state of facts since the alternative provision would take effect only in the event of the testatrix's leaving insufficient numbers of the shares of the stock in the corporations listed in Item Fourth to satisfy the bequests made therein.

The Court feels justified from a reading of the complete will that it was the primary intention of the testatrix to benefit the legatees of the shares of the stock of the various corporations by giving to them shares of stock in the corporation which she held at the time of the execution of the will and that these bequests were intended to be specific. It seems more natural to presume that, in arriving at her testamentary scheme, the testatrix was dealing with property which she then owned and dealt with in her affairs.

Having decided that the legacies are specific, we turn to a consideration of the effect upon the legacies caused by the changes to the corporate stocks which occurred subsequent to the execution of the will but prior to the death of the testatrix. This general question is discussed in 41 Yale Law Journal 101, and cases are collected in 6 A. L. R. 1353, 73 A. L. R. 1250, 63 A. L. R. 639, 97 A. L. R. 1033, 7 A. L. R. (2d) 276, 10 A. L. R. 1326, 89 A. L. R. 1130, and 172 A. L. R. 364. Counsel have cited a number of Ohio cases which relate to the treatment of specific and demonstrative legacies, but none has been found which bears directly on the principal problem presented by this case. A brief resume of some of these cases follows:

In **Hood v. Garrett, 53 Oh Ap 464 (1936)**, it was held that a bequest of "* * * 100 shares United Fruit Stock, 100 shares U. S. Playing Card Stock and 300 shares Proct[e]r and Gamble common stock" was general. No use of the word "my" was made in that case.

The court in **Sharp v. McPherson, 10 O. C. C. 181 (1895)**, held that a gift of the proceeds from certain real estate is adeemed by a sale of the property by the testator prior to his death.

In **Nash, Exr. v. Hamilton, 8 Oh Ap 66 (1918)**, it was held that a gift of "$2,000.00 of the first mortgage bonds of The Gallipolis Gas & Electric Company, said bonds being secured by mortgage upon both the gas and electric plants" created a demonstrative legacy not subject to ademption.

The case of **Rote v. Warner, 17 O. C. C. 342 (1899)**, holds that in using the language "I do also give and bequeath to my wife in trust for my daughter, Marjorie O. Warner, until my daughter arrives at the age of majority, the sum of ten thousand dollars, payable as follows: Twenty shares of the capital stock of the First National Bank of Painesville, Ohio, at $2,000.00. One thousand dollars in Lake Shore & Michigan Southern Railway Company at par $1000.00. $7000.00 in money or in good well secured notes," the testator created a demonstrative legacy because "The main or ruling idea of the testator is the amount, * * *."

The court in **Shaw, Exr. v. Shaw, 32 Oh Ap 168 (1928)**, held the following gift not to be a specific legacy and consequently subject to contribution: "The proceeds arising from the sale of said sixty acres to be paid as follows: $2,000.00 to be invested by my executors in Government Bonds or good mortgage securities * * *."

Similarly, the case of **Kenaday v. Sinnott, 179 U. S. 606, (1900)**, cited by Ohio Wesleyan University, is not applicable because the court construed to be a demonstrative legacy a bequest reading: "* * * also, deposits of currency entered on my bank book of the National Metropolitan Bank, amounting to $10,-000.00 more or less."

The case of **In Re Snyder, 217 Pa. 71, 66 A. 157**, also cited, is in the same category.

The law as to ademption of specific bequests of stock was derived in the early English cases by drawing analogies to cases where the testator had bequeathed a certain horse or cow.

**In Re Slater, 1 Ch. 665, 672 (1907)**, the statement is made: "Where is the thing which is given? If you cannot find it at the testator's death, it is no use trying to trace it unless you can trace it in this sense, that you find something which has been changed in name and form only, but which is substantially the same thing." In the Slater case, following this philosophy, it was held that a bequest of an interest in a privately owned water works was adeemed because, prior to the death of the testator, the private water works had been consolidated under an act into a component of the metropolitan water board.

In the case of **In Re Brann, 219 N. Y. 263, 114 N. E. 404 (1916)**, Cardozo, J., in holding that shares of a subsidiary distributed by the corporation under an order of court in an anti-trust case did not pass to the legatee under a bequest of "the 30 shares of stock of the Standard Oil Co. owned by me," said: "It may be that where the change is merely formal, as where a company is reorganized and there is a reissue of the shares,

the identity of the gift will be held to be substantially preserved." In that case, however, it should be pointed out that the testator, by codicil, republished the identical will subsequent to the distribution of the shares of stocks in the subsidiaries.

In general, the modern cases can be said to follow the doctrine of "substantial identity" in deciding whether stock held by the testator at the time of his death passes to the legatee under the terms of a description of the stock in a given will. There seems to be considerable difference of opinion among the various courts as to what constitutes "substantial identity." This does not appear to be unnatural in view of the fact that there may be differences in the phraseology used by the testator in making the bequests of stock as well as in the other phraseology of the will, the fact that there may be wide differences in the type of change in the corporate holdings, and the fact that the intent of the testator will often be construed by the courts either consciously or subconsciously with regard to the relationship of the legatee to the testator.

It may be that the court should re-examine the nature of a bequest of stock in the surroundings of the modern business world rather than applying the "substantial identity" doctrine which seems to be based on a warped and inept analogy to the law applied to tangible chattels. A share of corporate stock entitles the shareholder to an undivided share of the profits of the corporation which may be declared from time to time in the form of dividends and also to a share in the assets of the corporation on liquidation. These rights may from time to time be altered by action of the board of directors alone or in certain cases by other actions which must be approved by a vote of the shareholders. Corporate law provides, through these possibilities, needed flexibility in financing so that the management and shareholders may deal with varying business conditions and turns in corporate fortune. In the world of today, it seems more logical to assume that, in the absence of language to the contrary, a testator, in making a gift of a given number of shares of stock in a corporation, intends that the legatee be entitled to the future profits of the corporation in the same fractional share as the testator received at the time of the execution of the will on that number of shares. However, this Court is content to dispose of this case upon the intention of the testatrix, the analysis of which is supported by the reported cases dealing with this or a similar type of bequest as in the case at bar.

In the reorganization of Sterling Drug, Inc., the testatrix received in exchange for each share of ten dollars ($10.00) par

value two (2) shares of five dollars ($5.00) par value. At the same time the shareholders voted to increase the authorized capital stock of the corporation to provide for further expansion of the corporation at such time as the management might deem advisable and also authorized the corporation to issue one hundred twenty-five thousand (125,000) shares preferred stock of one hundred dollars ($100.00) par value per share in order to retire outstanding bank loans. It would appear that these steps amounted only to a reorganization of the capital structure of the corporation and that the net effect, insofar as the testatrix's shares of common stock were concerned, was that she recceived two (2) shares of five dollars ($5.00) par value for each previously held share of ten dollars ($10.00) par value. **The substantial identity of the testatrix's interest in the corporation was preserved.** See **In Re Mandelle's Estate, 252 Mich., 375, 233 N. W. 230 (1930),** where shares of twenty-five dollars ($25.00) par value held at the execution of the will were exchanged prior to the death of the testator into five (5) shares of no par value.

It is the opinion of the Court that the shares of Sterling Drug, Inc. should be distributed to the legatees of shares of Sterling Products (Incorporated) stock in a number twice that mentioned in the will. The cases cited below in the discussion of the effect of the American Home Products Corporation stock will also support this holding.

In the October 14, 1946 amendment to the certificate of incorporation of the American Home Products Corporation, the testatrix received two (2) additional shares of one dollar ($1.00) par value for each share of identical one dollar ($1.00) par value stock which she then held. The shareholders voted to increase the authorized number of shares from one million, five hundred thousand (1,500,000) to five million (5,000,000) shares and the aggregate par value of the stock distribution ($2,572,390.00) was charged against capital surplus on the books of the corporation. There remained after the amendment a number of authorized but unissued shares for future expansion. The distribution of the two (2) additional shares was referred to by the corporation "to be in the nature of a split-up of the shares." The directors stated that the increase in the number of outstanding shares would result in a wider distribution of and create a broader market for the stocks of the corporation. The bonus plan of the corporation was amended at the same time to provide that no bonus fund could be set aside unless the profits allocable to dividends reached a minimum of twenty cents (20c) a share on each outstanding share rather than on a minimum of sixty cents (60c) a share. There

was no transfer of earnings to the capital account because the earned surplus of the corporation was not affected by the issuance of the additional shares.

. It will be noted that after the stock distribution each share held by the testatrix represented one-third (1/3) of the interest in the corporation that a single share represented prior to the issuance of the two (2) additional shares. As far as the net effect on the interest of the testatrix was concerned, it was immaterial whether the corporation called in the shares she held prior to the stock issuance and exchanged it for three (3) new shares or proceeded as it did to issue two (2) additional shares to her. The net effect of the stock distribution was a restatement of the capital value of the corporation. It was a step as might be normally taken by any corporation in the prudent management of its affairs. There was no effect whatsoever on the net worth of the corporation and none of the assets of the corporation were distributed to the shareholders. This Court is of the opinion that this change in the holdings of the testatrix in the American Home Products Corporation was not enough to destroy the substantial identity of her interest in the corporation so as to work a partial ademption of the stock bequeathed. As in the changes which occurred in the Sterling Drug, Inc. stock, the testatrix did not initiate such changes and, in fact, could not have prevented such changes if a sufficient number of the other shareholders in the corporation had approved the changes. This Court is of the opinion that the testatrix, in making bequests of the American Home Products Corporation, intended to make gifts of the shares which she held at the time of making her will. The Court believes that it was not her intention that a change in her interest in the American Home Products Corporation of the type which occurred on October 14, 1946 should diminish her bounty or vary her testamentary scheme.

In **Chase National Bank v. Deichmiller, 107 N. J. Eq. 379, 152 A. 697 (1930)**, the testator, who at the time of the execution of the will owned four thousand, two hundred (4200) shares, made a gift of "Eight hundred shares of the capital stock of the F. W. Woolworth Company which I now own and possess, or in case I shall not own and possess same at the time of my decease its equivalent in cash or securities at market value at the time of my decease." Subsequent to the execution of the will and prior to the death of the testator, the Woolworth corporation declared a fifty per cent (50%) stock dividend and later in a split-up exchanged the shares on a ratio of two and one-half (2-½) to one (1). The court decided that the legatee took the shares of the company in a ratio of three

and three-quarters (3-3/4) times the number mentioned in the will. The following statements were made by the court in the course of the opinion: "Unquestionably the bequest is of eight hundred of those four thousand two hundred shares— not the shares he owned and possessed at his death. * * * the acts of the corporation in increasing the number of shares issued—not by selling additional shares in exchange for additional capital, but simply by multiplying the shares of stock outstanding by three and three-quarters, without any increase in the net assets had no other result than this: that the interest in the corporation which theretofore had been represented by one share of old stock was thereafter represented by three and three quarters shares of the new stock."

In **Fidelity Title & Trust Co. v. Young, 101 Conn. 359, 125 A. 871 (1924),** the gift was in trust "two hundred and fifty (250) shares of the stock of Butler Brothers, or its equivalent in cash at the time of my decease should I not then be the owner of said stock * * *." The testator owned more than the number of shares bequeathed at the time of the execution of the will. Subsequent to the execution of the will, the par one hundred dollar ($100.00) shares were exchanged for five (5) twenty dollar ($20.00) par shares and the testator bought for forty dollars ($40.00) per share additional shares of the twenty dollars ($20.00) par stock which the corporation was authorized to issue at the time of the reduction in par value. The court held that the legatee took five (5) times the number of shares mentioned in the will. This reorganization resulted in an exchange of the testator's shares, but it should be noted that the capital account of the corporation was changed and that additional capital in the form of money received by the corporation from the issuance of additional shares was added to the corporation's capital.

In the case of **Will of Hinners, 216 Wis. 294, 257 N. W. 148 (1934),** there was an exchange of preferred and common stock for common stock in the same corporation. The court held that the legatee took the number of the new preferred and common stock which the testator had received for the number of shares mentioned in the will. The new preferred shares which were issued were charged against surplus just as in the case of the American Home Products Corporation Of course, there is a difference, which this Court does not feel to be controlling in the fact that the reorganization was effected by exchange rather than the issuance of preferred shares in addition to the existing common.

In the case of **Heckler v. Young, 264 Ill. App. 34 (1931),** the bequest was: "Third: I give, devise and bequeath to Virginia

Heckler * * * thirty (30) shares of capital stock of Union Carbide & Carbon Corporation. In the event that I should not be possessed of said shares of capital stock at the time of my death, then I direct that the said Virginia Heckler receive from my estate an amount in cash equivalent to the market value of said stock hereinabove devised to her, said market value to be fixed as of the date of this my last Will and Testament." The corporate shares at the approximate time that the testatrix executed her will were in the process of being exchanged on a three (3) for one (1) basis. The court held that the legatee took three (3) times the number of shares mentioned in the will, holding that the intent of the testatrix was to give a gift of the old shares but that in any event, since the issuance of the new shares had not been quite completed by the date of the will, the legatee would have taken in the alternative, had no shares of the corporation stock been in the testatrix's estate at the time of her death, a cash amount based on the value of the old shares. It will be noted that the alternative clause in Heckler v. Young fixes the value of the alternative gift to terms of the value of the stock bequeathed at the date of the will. However, in the cases of Chase National Bank v. Deichmiller and of Fidelity Title & Trust Co. v. Young, supra, the alternative bequest was couched in language substantially similar to that used by the testatrix in this case. Counsel for Ohio Wesleyan, one of the residuary legatees under this will, have strenuously contended that the fact that the alternative clause speaks in terms of value of the stock as of the date of decease demonstrates an intention on the part of the testatrix to give to the legatees stock in the form as it existed at the time of her death. This Court is of the opinion (in accordance with the Deichmiller and Fidelity Title & Trust Co. v. Young cases) that the fact that the testatrix provided for an alternative gift in cash should she not be possessed of sufficient shares is, if anything, indicative of an intent to give shares which she then owned and that she intended that the proportionate interest in the value of the corporation which those shares represented should be given to the legatees.

In **Goode v. Reynolds, 208 Ky. 441, 271 S. W. 600 (1925)**, the testator received for shares of stock in a bank, which he held at the time of the execution of his will, an equal number of shares in a new bank plus some shares in a realty corporation which handled the liquidation of certain assets of the old bank which were not consolidated. The court held that the legatee received the shares in the new bank plus the shares in the realty corporation but excluded from the legatee's share

cash dividends from the realty corporation which had already been paid to the testator prior to his death. Thus, it was held that the specific legatee received part of the capital assets of the old corporation even though at the time of the death they were in the form of shares of a new corporation.

In the case of **Butler v. Dobbins,** —— Me. ——, **53 A. 270 (1947),** the court held that the specific legatee of certain bank stock was entitled to a stock dividend declared nine months before the death of the testator on the basis of one (1) share of stock for each three (3) shares held. The court say: "Action taken by the bank in reorganizing its capital structure should not result in defeating the purpose of the testatrix."

In the case entitled **In the Matter of the Will of Harry H. Hicks, 272 App. Div. 594, 74 N. Y. S. 2d 246 (1947),** it was held that a specific legatee received three (3) additional shares issued to each shareholder although in the facts of the case it did not appear that the actions necessary to complete the recapitalization of the corporation had been completed.

For the above stated reasons, the Court declares that the shares of Sterling Drug Inc. should be distributed to the legatees of shares of Sterling Products (Incorporated) in a number twice that mentioned in the will and that the shares of American Home Products Incorporated should be distributed to the legatees of stock of that corporation in a number three times that mentioned in the will.

As to question "c" propounded, suffice to say that the parties have agreed that the rights to subscribe for stock issued by American Home Products Corporation on December 15, 1944 and on July 31, 1946 have no effect on the outcome of the case; and the Court, after considering the matter, is of the same opinion.

An entry embodying the findings of fact and law and the declarations of rights and legal relations as disclosed by this opinion may be submitted for the Court's approval.

Costs to the estate.