110 So.2d 498 (1959)
In re ESTATE of Howard W. PARKER, Deceased.
Mildred E. PARKER, Edith Hays and Florence Freeders, Appellants,
v.
Lucille B. PARKER, Appellee.
No. A-418.
District Court of Appeal of Florida. First District.
March 19, 1959.
Rehearing Denied April 10, 1959.
*499 Lawrence O. Sands, of Hull, Landis, Graham & French, De Land, for appellants.
John E. Socash, De Land, for appellee.
WIGGINTON, Judge.
Appellant daughters of a deceased testator have appealed from an order of the *500 County Judge which found that the bequests of corporate common stock made to them were general in character, and did not include a proportionate number of additional stock shares received by testator prior to his death as a result of a stock split by the corporation.
Testator and appellee were married late in life, each having children by previous marriages. Prior to executing his will testator made certain extra-testamentary dispositions of real and personal property to his wife. At the time his will was made on January 23, 1950, testator's estate consisted only of 255 shares of common stock in United States Steel Corporation. By his will testator bequeathed 155 shares of this stock, or approximately 61% thereof, to his three daughters, which bequests, except for name, address and amount, read as follows:
"I give and bequeath to my daughter, ____ of ____, ____ shares of United States Steel Common stock, to be hers absolutely."
His remaining 100 shares of stock, which compose the balance of his testamentary estate, or approximately 39% of the total, were bequeathed by the testator to his wife as residuary legatee. Twenty-one months prior to testator's death on February 17, 1957, he received from United States Steel Corporation an additional 255 shares of common stock as a result of a stock split by the corporation. At the time of his death testator's estate consisted solely of the 510 shares of United States Steel Common stock, being the number of shares held by him at the time he executed his will, supplemented by an equal number subsequently received as a result of the stock split by the corporation.
At the time of the execution of his will, the stock owned by testator had no par value but carried a stated value of $33.33 per share. As a result of the reorganization by the corporation of its capital structure, the common stock was split two for one with each share having a par value of $16.66 per share.
By his order the county judge found that the language employed by the testator in his will indicated no intention to segregate the subject of the specific bequests to his daughters from his general property. It was therefore held under the authority of the McDougald case[1] that the bequests of stock to the daughters were general as distinguished from specific in character, and the legatees were each entitled to receive only the number of shares designated in their respective bequests. As a consequence of this ruling the additional shares of stock received by testator as a result of the stock split will become a part of the residuary estate and pass to the widow as residuary legatee. Under the terms of the order here assaulted, the three daughters of testator will receive in value approximately 30% of the testamentary estate, and the widow approximately 70% thereof.
A specific legacy is a gift by will of property which is particularly designated and which is to be satisfied only by the receipt of the particular property described.[2] Income received during administration on property specifically devised shall become property of the specific devisee.[3] A general legacy or devise is one which does not direct the delivery of any particular property; is not limited to any particular asset; and may be satisfied out of the general assets belonging to the estate of testator and not otherwise disposed of in the will.[4] Income received on property which is the subject of a general bequest passes to the residue of the estate.[5]
It was held at common law that if the particular property described in a specific *501 bequest is disposed of by the testator during his life, or cannot be located, the bequest must fail or adeem.[6] It was also the rule at common law that if the subject of a bequest was described in general terms, it was considered to be a general bequest and disposition by testator during his life of all or a part of the property so bequeathed did not create an ademption. In such case the personal representative was required to obtain and deliver to the legatee property satisfying the general description of the bequest.[7] If, however, the property designated in the will for payment of charges against the estate was insufficient for that purpose, general bequests would abate prior to specific bequests.[8]
The technical distinction between general and specific bequests becomes important only when considering situations involving ademption, abatement or disposition of income earned on the subject of the bequest during administration. Illustrative of the later situation is the decision of our Supreme Court in the case of In re McDougald's Estate, supra. There the will contained the following bequest [149 Fla. 468, 6 So.2d 274]:
"I give to my stepdaughter, Mabel E. Chase of Tampa, Florida, 15 shares of stock in Goodall Worsted Company; also 15 shares of stock in Goodall Securities Company, and also five shares of preferred stock in Tampa Gas Company."
The question involved was whether the income received during administration from the subject of this bequest belonged to the legatee Mabel E. Chase, or became a part of the residue of the estate. The court construed the bequest to be general and not specific, thereby preserving for use of the estate the income derived from the stock described in the bequest. If the same question were presented in the case now on review, we would be inclined to hold the bequests in question to be general in character in order that the residue of the estate would receive such income as may be earned during administration. This question, however, is not before us for decision.
It is uniformly held in this jurisdiction that in construing last wills and testaments the polar star by which the court is guided is the intent of the testator as ascertained by a consideration of the entire instrument, and not some isolated segment thereof.[9]
In determining intent, the situation of the testator at the time he made his will, the ties that bound him to the object of his beneficence, the motives which prompted him to make the will he did make, and the influence that wrought on him at the time will all be considered in arriving at the purpose of the testator.[10] When once the intention has been discovered, the wording of the will shall be given such liberal construction as will effectuate the intention of the testator consistent with established rules of law.[11] One of the important factors to be considered in arriving at testator's intent is the apparent testamentary scheme adopted by him for disposition of his property as shown by the terms and provisions of his will.[12]
*502 In situations involving ademption or abatement it seems to be well settled that a bequest of shares of stock in a named corporation will be treated as a general legacy unless a contrary intent appears from the will. Two reasons are given for this: to prevent ademption in case the testator parts with the stock before his death, and to secure uniformity of contribution in case of a deficiency of assets. This rule, like most rules for the construction of wills, is a device for securing uniformity of decision and for giving effect to the probable intent of the testator when the will fails to give any sufficient indication of his actual intent. Necessarily the rule yields to the testator's intent when that can be gathered from the will.[13]
Appellants contend that if the bequests to them are to be held general bequests, and they are entitled to receive only the number of shares specified in the will, this will result in a 50% ademption in the value of the stock which the testator intended for them to have at the time he made and executed his will. This is so for the reason that the stock split reduced the original value of each share of stock by 50%.
It is appellants' contention that the will in question should be interpreted according to the apparent testamentary scheme of disposition by which testator intended for his children to receive the major portion of his testamentary estate, and that his widow received approximately that portion thereof which would correspond with her dower rights under the law of this State. This position is premised upon the accepted principle that the intent of the testator shall be determined as of the time of the execution of his will,[14] and such intention cannot be altered by the occurrence of subsequent events (in this case the stock split by the corporation), which the testator did not anticipate and over which he had no control.[15]
The pronounced tendency of the courts has been to hold, upon the slightest evidence of testamentary intent, that bequests of corporate stock are sufficiently clothed with the characteristic of a specific bequest as to avoid abatement or ademption either in value or in kind.[16]
The Supreme Court of Massachusetts has held that the legatee of a stated number of shares of common stock under a general bequest in a will was not entitled to receive a proportionate number of additional shares subsequently acquired by the testator as a result of a corporate stock split.[17] However, the more recent trend of judicial opinion, and the one to which we subscribe, has been to the contrary.
In a case arising in Pennsylvania under facts substantially identical to those present in the case now considered by us, the trial court ruled that the legatee of a stated number of shares of common stock under a general bequest was not entitled to a proportionate number of additional shares resulting from a stock split after the execution of the will, but was confined to the number of shares designated in the bequest. In reversing, the Supreme Court held that as the legacies were unquestionably general, the legatee is entitled to the stock or its value as contemplated at the date of the will. The legacies were not adeemed merely *503 because of a change in corporate form. The change was clearly one of form and not of substance. While the will is only effective at death, the intent of the testator governs concerning the identity or value of the legacy. This is governed by the words of the will governing the surrounding circumstances. What the testatrix manifestly intended to bequeath to each legatee was 50 shares of the common stock of the corporation which she then owned. Such a change in form, but not of substance, will not defeat a manifest testamentary intent to each legatee by way of a general legacy, an equal one half share of the stock which she then owned in the corporation.[18] The reasoning of the Pennsylvania court with respect to the effect of a stock split on shares previously owned by the testator was followed by our own Supreme Court in a case involving the construction of a specific bequest in a will. In that case it was said:
"A stock split-up is a mere change in form, and not in substance, and that additional shares so acquired pass under a specific bequest of the original shares."[19]
Our research fails to reveal any decision in which our own Supreme Court has passed directly upon the question of law now considered by us on this appeal, but the reasoning adopted by it in the Vail case fortifies our view that the rule announced in the McFerren case above discussed is sound and should be followed in this jurisdiction.
In a case involving the construction of a will containing a bequest of corporate common stock, an Ohio court found that the bequest in question was specific thereby entitling the legatee to additional shares received by the testator as a result of a corporate stock split prior to testator's death. In pointing up the fallacy of determining the entitlement of a legatee to additional shares resulting from a stock split on the basis of whether the bequest is specific or general, the court philosophized that modern cases can be said to follow the doctrine of "substantial identity" in deciding whether stock held by the testator at the time of his death passes to the legatee under the terms of a description of the stock in a given will. There seems to be considerable difference of opinion among the various courts as to what constitutes "substantial identity". This does not appear to be unnatural in view of the fact that there may be differences in the phraseology used by the testator in making the bequests of stock as well as in the other phraseology of the will, the fact that there may be wide differences in the type of change in the corporate holdings, and the fact that the intent of the testator will often be construed by the courts either consciously or subconsciously with regard to the relationship of the legatee to the testator. It may be that the courts should re-examine the nature of a bequest of stock in the surroundings of the modern business world rather than apply the "substantial identity" doctrine which seems to be based on a warped and inept analogy to the law applied to tangible chattels. A share of corporate stock entitles the shareholder to an undivided share of profits of the corporation which may be declared from time to time in the form of dividends, and also to a share in the assets of the corporation on liquidation. These rights may from time to time be altered by action of the board of directors alone, or in certain cases by other actions which must be approved by a vote of the shareholders. Corporate law provides, through these possibilities, needed flexibility in financing so that the management and shareholders may deal with varying business conditions and turns in corporate fortune. In the world of today, it seems more logical to assume that, in the absence of language to the contrary, a testator, in making a gift of a given number *504 of shares of stock in a corporation, intends that the legatee be entitled to the future profits of the corporation in the same fractional share as the testator received at the time of the execution of the will on that number of shares.[20]
The courts of New York have also held that a general bequest of a stated number of shares of common stock entitles the legatee to receive the additional shares resulting from a corporate stock split prior to testator's death.[21]
Under authorities of ancient origin a literal interpretation of the bequests here considered would indicate that it is general in character. Under all the facts reflected by this record, and considering the apparent scheme of testamentary disposition adopted by the testator with respect to his testamentary estate, there is respectable authority for the view that it was the intent that the bequest be specific. For the purpose of our decision, however, it is immaterial in which category the bequest may fall. We are convinced that the stock split which occurred as a result of corporate reorganization after execution of testator's will, but before his death, effected a change only in the form of the shares of stock, and not in their substance. This contingency was one which the testator had no reason to anticipate at the time of execution of his will, and was one over which he had little, if any, control. We therefore hold that the bequests made to the appellant daughters of a stated number of shares of common stock in United States Steel Corporation carried with them the additional shares resulting from the stock split which were received by testator prior to his death.
Upon the authorities and for the reasons hereinabove mentioned, the order appealed from is reversed and the cause remanded for the entry of an appropriate order consistent with the rulings made herein.
STURGIS, C.J., and CARROLL, DONALD K., J., concur.
NOTES
[1] In re McDougald's Estate, 149 Fla. 468, 6 So.2d 274.
[2] Redfearn on Wills, 3d Ed., § 146, p. 231.
[3] F.S. § 731.22, F.S.A.
[4] Redfearn on Wills, supra, note 2.
[5] F.S. § 731.22, F.S.A.
[6] Ashburner v. Macguire, (1786) 2 Bro. C.C. 108, 29 Eng.Rep. 62.
[7] Partridge v. Partridge, (1736) Cas.Talbot 226, 25 Eng.Rep. 749.
[8] Wedmore v. Wedmore, (1907) 2 Ch.Eng. 277, 2 B.R.C. 502.
[9] Meszaros v. Holsberry, Fla. 1956, 84 So.2d 565; Morgenthaler v. First Atlantic National Bank of Daytona Beach, Fla. 1955, 80 So.2d 446.
[10] Iles v. Iles, 158 Fla. 493, 29 So.2d 21; Marshall v. Hewett, 156 Fla. 645, 24 So.2d 1.
[11] Christian Herald Ass'n v. First National Bank of Tampa, Fla. 1949, 40 So.2d 563.
[12] In re Jaynes' Will, 3 Misc.2d 118, 154 N.Y.S.2d 89; Fidelity Title & Trust Co. v. Young, 1924, 101 Conn. 359, 125 A. 871.
[13] Dryden v. Owings, 49 Md. 356; Johnson v. Conover, 54 N.J. Eq. 333, 35 A. 291; Giddings v. Seward, 16 N.Y. 365; Ives v. Canby, C.C., 48 F. 718; 57 Am.Jur., Wills, § 1406, p. 940.
[14] 95 C.J.S. Wills § 590, p. 750.
[15] In re Bourn's Estate, 25 Cal. App.2d 590, 78 P.2d 193; Vollmer v. McGowan, 409 Ill. 306, 99 N.E.2d 337; Morrow v. Detroit Trust Co., 330 Mich. 635, 48 N.W.2d 136; In re Mandelle's Estate, 252 Mich. 375, 233 N.W. 230.
[16] Fidelity Title & Trust Co. v. Young, supra note 12; Thayer v. Paulding, 200 Mass. 98, 85 N.E. 868; Burnett v. Heinrichs, 95 N.J. Eq. 112, 122 A. 681; Gardner v. Viall, 36 R.I. 436, 90 A. 760; In re Largue's Estate, 267 Mo. 104, 183 S.W. 608.
[17] First Nat. Bank of Boston v. Charlton, 1932, 281 Mass. 72, 183 N.E. 250.
[18] In re McFerren's Estate, 1950, 365 Pa. 490, 76 A.2d 759, 22 A.L.R.2d 451.
[19] In re Vail's Estate, Fla. 1953, 67 So.2d 665, 667.
[20] Clegg v. Lippold, Ohio Prob. 1951, 123 N.E.2d 549.
[21] Matter of Fitch's Will, 1952, 281 App. Div. 65, 118 N.Y.S.2d 234.