**BATES et, Exrs., Appellees v. BATES, Appellee; BRANN, Appellant; HARCUM et, Appellees.**

Ohio Appeals, First District, Clinton County.

No. 135. Decided November 10, 1943.

486

Messrs. Smith & Kirk, Wilmington, for C. Everett Bates and Margaret I. Bates, Executors, etc.

Mr. James N. Linton, Columbus, and Mr. C. Luther Swaim, Wilmington, for appellant.

## OPINION

By MATTHEWS, J.

This is an appeal from a judgment construing the will of Harry G. Bates, deceased.

The testator was a partner in three distinct partnerships, each of which was engaged in the canning business, but at different locations. One, located at South Charleston was known as the South Charleston Canning Company, and in this the only other partner was the testator's son, C. Everett Bates. Another, located at Spring Valley, was known as Spring Valley Packing Company, and the only other partner was his son-in-law, H. W. Harcum. The other located at New Vienna, was known as New Vienna Packing Company, and the other partner was his other son-in-law, R. C. Brann.

By his will, Harry G. Bates first provided for the payment of his debts, then gave all household furnishings and equipment to his widow, then gave her a life estate in real estate in Blanchester, and subject thereto three-tenths to each of his two daughters and four-tenths to his son, explaining the disparity by the statement that his son had been of valuable assistance during the reconstruction of the property. In the next item he gave his coal business located in Wilmington to his widow and niece Helen L. Patterson in equal shares subject to "all indebtedness and liability in connection with said business."

As the meaning of Items Five, Six, and Seven are directly brought in issue, we quote them verbatim:

"Item 5. I give, devise and bequeath to my son, C. Everett Bates, absolutely and in fee simple, all my interest in the assets of the canning business conducted by my said son and my-

self at South Charleston, Ohio and known as the South Charleston Canning Company, including all real estate connected with or used by said business, this devise and bequest being charged, however, with all indebtedness and liability in connection with said business and my said son shall assume and pay the same to the satisfaction of my executors. At the date of this will, I am the owner of one-half of the business mentioned in this item."

"Item 6. I give, devise and bequeath to my daughter, Loraine A. Harcum, absolutely and in fee simple, all of my interest in the assets of the canning business conducted by my son-in-law, H. W. Harcum, and myself at Spring Valley, Ohio, and known as the Spring Valley Packing Company, including all real estate connected with or used by said business, this devise and bequest being charged, however, with all indebtedness and liability in connection with said business and my said daughter, Loraine A. Harcum, shall assume and pay the same to the satisfaction of my executors. At the date of this will, I am the owner of one-half of the business mentioned in this item."

"Item 7. I give, devise and bequeath to my daughter, Maphia E. Brann, absolutely and in fee simple, all of my interests in the assets of the canning business conducted by my sin-in-law, R. C. Brann, and myself at New Vienna, Ohio and known as the New Vienna Packing Company, including all real estate connected with or used by said business, this devise and bequest being charged, however, with all indebtedness and liability in connection with said business and my said daughter, Maphia E. Brann, shall assume and pay the same to the satisfaction of my executors. At the date of this will, I am the owner of one-half of the business mentioned in this item."

By Item Eight the sum of seven thousand dollars was bequeathed to his seven grandchildren, and all the residue of his estate he gave to his widow and three children, share and share alike.

The testator died on January 10th, 1943.

The canning of corn is a seasonal business and the expectation is that between seasons the canned corn will be sold, the selling price collected and the season's profits determined. It cannot be said from this record that the expectation was always realized in the operation of these partnerships. Nor can it be said that all the profits were divided between the partners annually. That didn't take place the last year of the life of the testator.

On November 16th, 1942 the testator was paid $9605.09, in full of his share of the profits of the Spring Valley Packing Company. During the year 1942, the testator received on account of profits of the South Charleston Canning Company two payments totaling $4000.00 and at the time of his death there was on hand canned corn of the value of $3170.00 and $397.23 in bank and debts totaling $573.41, leaving $2994.42 in corn and cash in which the testator had an undivided three-eights interest.

At the close of 1942 the New Vienna Packing Company had on hand canned goods of the value of $13,833.77 and $8635.21 on deposit in bank subject to debts amounting to $591.00, leaving $21,877.98 in corn and cash in which the testator had an undivided one-half interest. On January 8th, 1943, the testator was paid $2500.00, which left his interest in the partnership assets worth $8438.99. The corn had been sold, but not delivered during the testator's lifetime, for the reason appearing in appellee's brief and the court's opinion, but not otherwise, that the United States had prohibited the transfer.

The prayer, so far as material here, is as follows:

"(2) Do the profits from the Spring Valley Packing Company for the pack of the year 1942 paid to Harry G. Bates in his lifetime in the amount of $9605.09 pass to Loraine A. Harcum under Item 6 of said will or are they subject to the provisions of Item 8 of said will as a part of residuum of said estate.

"(3) Do the profits of the South Charleston Canning Company for the pack of the year 1942 paid to Harry G. Bates in his lifetime in the amount of $4000.00 pass to C. Everett Bates under Item 5 of said will or are they subject to the provisions of Item 8 of said will as a part of the residuum of said estate.

"(4) Do the profits of said South Charleston Canning Company for the pack of the year 1942, unpaid to Harry G. Bates at the time of his death, in the amount of $1122.91, partially in canned corn and partially in money in bank at the time of his death, pass to C. Everett Bates under Item 5 of said will or are they subject to the provisions of Item 8 of said will as a part of the residuum of said estate.

"(5) Do the profits of the New Vienna Packing Company for the pack of the year 1942, paid to Harry G. Bates in his lifetime in the amount of $2500.00 pass to Maphia E. Brann under Item 7 of said will or are they subject to the pro-

visions of Item 8 of said will as a part of the residuum of said estate.

"(6)   Do the profits of said New Vienna Packing company for the pack of the year 1942 unpaid to Harry G. Bates at the time of his death and in the amount of $8438.99 partially in canned corn sold under contract and partially in money in bank at the time of his death, pass to Maphia E. Brann under Item 7 of said will or are they subject to the provisions of Item 8 of said will as a part of the residuum of said estate."

The appraisers placed the same, valuation upon the physical assets of these partnerships.

An effort was made to show that the partners distributed all the profits each year, but the evidence falls short of proving it.  If the evidence so proved, we would not consider it material.

The claim is made that the testamentary plan contemplated equality among the children and that that could only be realized by so construing the bequests of his interest in these partnerships as applying only to the physical assets. If we take the profits realized in 1942 as the criterion, equality would not result by that method of interpretation.  But there is nothing in the language of this will that justifies such a construction.  Accrued profits are just as much an asset of a partnership as the original capital contributed by the partners.

It is argued that the testator considered that the partnership owed the profits to the partners and meant by the use of the phrase "indebtedness and liabilities" to exclude undistributed profits from his interest in the partnership.  We are told that in corporate bookkeeping and in the making of balance sheets and financial statements undivided profits are placed on the liability side, and that the bookkeeping practice of partnerships is the same.  The books of these partnerships are not in evidence and there is no evidence that the testator knew of this practice.

The nature of things would prevent a corporation or any other business unit from transmuting a liability into an asset or vice versa.  They are antonyms not synonyms.  And we don't find that the attempt has been made.  The exhibits offered to show it fail to do so.  What they show is a statement based on the hypothesis of complete liquidation.  For that purpose the capital as well as the undivided profits is considered

a liability. Were the basic hypothesis executed by the contemplated dissolution and distribution there would remain nothing. Applying it in this case it would completely defeat the bequests.

The language of these provisions of this will is clear and unambiguous and the Court would not be justified in disregarding it to give effect to a supposed intention not expressed.

The fact is, that the inequality, if any, intentional or unintentional, results from the acts of the testator in the way he conducted these partnerships after he made his will. The subject-matter of these provisions was not static property. It was in constant process of change—and the change was not, and perhaps could not be, made to progress, at a uniform rate. There was no obligation or intention of the testator to see either that the partnership assets remained the same or that if change was made in the assets of one similar change should be made in the other. Each bequest was ambulatory during the testator's life and could operate on only what was left of the subject-matter.

The situation calls for the application of the principles of ademption rather than construction.

In **41 O. Jur., 956,** it is said:

"It may be stated as a general rule that the disposal, loss, distribution, or extinction of the subject-matter of a specific legacy, adeems the legacy. Thus, a gift of the proceeds of a farm, after a life estate therein, is adeemed by the sale of the farm during the testator's lifetime, and a gift of the proceeds of a debt due the testator is adeemed by the collection of the debt by the testator."

It is said in 28 R. C. L. 344, that:

"At one time it was thought that when a change in the character of the property was effected by public authority or without the will of the testator, ademption did not follow, but it has been expressly held in some jurisdictions that this is no longer the law."

In re Settlement of Accounts of Brann, Exr., L. R. A. 1918 B (219 N. Y. 263, 114 N. E. 404) 663, bears some resemblance to this case. We quote the syllabus:

"Shares in subsidiary corporations distributed by a corporation to a holder of its stock, to comply with a court or-

der directing it to dispose of its holdings, after the execution of (his) will disposing of (his) shares in the corporation by name, pass to the residuary and not to the specific legatee; at least where a codicil published after the date of distribution provides legacies which cannot be paid if the new shares pass with the old, and otherwise confirms the will."

For these reasons, we hold that the undistributed profits formed a part of the assets of these partnerships and passed to the respective beneficiaries under the provisions of Items 5, 6 and 7 of this will.

The judgment is reversed. A decree reversing the judgment and construing the will in accordance with this opinion may be presented.

ROSS, P. J., and HILDEBRANT, J., concur.