NAGEL, APPELLANT, *v.* WILCOX, EXR., ET AL., APPELLEES.

535

(No. 1354—Decided March 27, 1957.)

*Messrs. Bulkley, Butler & Rini* and *Messrs. Sanborn, Nacey & Brandon,* for appellant.

*Messrs. Fauver & Fauver,* for appellee The Savings Deposit Bank & Trust Company, trustee.

DOYLE, J. A petition by the surviving wife of a deceased husband who died testate, to take real estate in the estate of her husband at the appraised value, under the provisions of Section 2113.38, Revised Code, was filed in the Probate Court of Lorain County.

Upon hearing, that court held that the parcel of land upon which the dwelling house was situated was all to which she was entitled, as against her claim that it was her right to not only take the real estate indicated in the court's judgment, but also real property contiguous thereto, all of which it is claimed constituted a single parcel of land and came within the provisions of the statute.

The judgment of the Probate Court was affirmed by the Common Pleas Court. The case is now before us on appeal on questions of law.

The appellant (Helen E. Nagel, the surviving wife) here asserts that "the judgment of the Common Pleas Court is contrary to the law and the evidence," and presents the following questions:

"Is property 'specifically devised' where it passes under the residuum clause of decedent's will?"

"Can a surviving spouse elect to take an entire farm at its appraised value where it was the home and mansion house of the decedent, or is her election restricted to merely that portion of the farm containing the mansion house?"

Section 2113.38, Revised Code, provides:

"A surviving spouse even though acting as executor or administrator, may purchase the following property, if left by the decedent and if not specifically devised or bequeathed:

"(A) The mansion house, including the parcel of land on which such house is situated and lots or farm land adjacent thereto and used in conjunction therewith as the home of the decedent, and the household goods contained therein, at the appraised value as fixed by the appraisers;

"* * * *"

If this property was specifically devised, the petitioner has no right to take any of it at the appraised value under the terms of the statute. We turn to the will for the answer to this question.

The will directs that (1) all debts and funeral expenses be first paid, and a suitable marker be constructed on the grave; (2) the livestock, crops and tools be sold at public auction; (3) the wife, Helen E. Nagel, be given exactly such share or portion of "* * * [the] estate, real and personal, as she would be entitled to receive as * * * [his] widow under the laws of descent and distribution of the state of Ohio, had * * * [he] died intestate"; (4) "All the rest, residue and remainder of * * * [the] estate of whatever kind and description and wheresoever situate of which * * * [the testator] may have the power to dispose of by will," be given, devised and bequeathed to The Savings Deposit Bank and Trust Co., Elyria, Ohio, "as trustee and in trust, however, for the uses and purposes hereafter set forth." The trustee bank was empowered to sell the corpus of the trust estate and to reinvest the proceeds of any sale "in such investments as are generally permitted by trustees * * * under the laws of Ohio," except, however, that the "residence real estate" should not be sold within three years from the date of death "without the prior consent of either my said wife or the Probate Court."

Subsequent items of the will directed the payments of income and principal of the trust, upon various conditions, to his children and surviving wife. This disposition is of no consequence to our decision.

Bequests of real or personal property may be classified as general, specific, or demonstrative; a bequest of a particular portion of a testator's estate, which is so described as to distinguish it from other parts of the estate, is generally held to be specific; and a specific bequest may be made in a residuary clause. *In re Estate of Mellott,* 162 Ohio St., 113, 121 N. E. (2d), 7.

In determining whether a gift is general or specific, a court is not governed by the nature of the property, whether real property or personal property.

It is noted from the will that the gift to the bank as trustee was for "all the rest, residue and remainder of my estate * * *." Obviously, this included only that which remained after the debts were paid, and the widow had been given the share of the estate which she "would be entitled to receive * * * under the laws of descent and distribution" had the estate devolved as intestate property.

It is argued that the clause in the will which directed that the trustee should not sell or dispose of the "residence real estate" within three years from the date of death without the prior consent of the wife, or the Probate Court, contemplated that this property was intended to be a part of the residuary estate, and as such was specifically devised.

There is no rule of law which prevents a testator from restricting the operation of a residuary clause to a particular or specific residue, and, in doing so, create a specific devise. However, an intention of a testator to restrict the operation of the residuary clause cannot be deduced from the mere absence of words, nor the inclusion of language directing the manner of the disposition of particular property if such property should perchance become a part of the residuary.

In the instant case, we think the language in the will is free from ambiguity, and plainly indicates that the residuary clause falls within the classification of a general devise. See: 4 Page on Wills (Lifetime Ed.), Section 1400, and cases therein cited; 128 A. L. R., 838, and cases noted.

We turn now to the right of the widow to take more property at the appraised value than was allowed her by the courts below.

It is her claim that she is entitled to take the entire tract located at the northeast corner of Lear-Nagel and Butternut Ridge Roads, in Lorain County.

The entire tract fronts 569 feet on the northerly side of Butternut Ridge Road and extends back 622 feet along the easterly side of Lear-Nagel Road. It contains between five and six acres and was appraised at $35,400.

In the original inventory, the tract was divided into four parcels:

Parcel No. 1. The residence property upon which decedent's home was located. This property, fronting about 170 feet on the northerly side of Butternut Ridge Road and extending about 250 feet along the easterly line of Lear-Nagel Road, was appraised at $16,500.

Parcel No. 2. The store property immediately east of the residence property, fronting 130 feet on the northerly side of Butternut Ridge Road and extending back 250 feet, on which is located a concrete block building and a vegetable stand. This parcel was appraised at $9,500.

Parcel No. 3. The remaining Butternut Ridge Road frontage, being vacant land, fronting about 265 feet on Butternut Ridge Road, appraised at $5,000.

Parcel No. 4. The remaining Lear-Nagel Road frontage, being vacant land fronting 372 feet on the easterly side of Lear-Nagel Road and extending back across the back lines of parcels Nos. 1 and 2, appraised at $4,400.

The evidence establishes the following facts:

The entire tract of land was purchased by the decedent, Albert L. Nagel, at one time, in the year 1946. After remodeling the residence, he and his wife occupied the house, and the entire tract was gardened by them, except for a small part which was covered with large boulders upon which a barn had formerly stood.

The Nagels were married in 1925, and were the parents of two children. When the Nagels first occupied the home, their sons were in the armed service; shortly thereafter, however,

they returned home and lived with their respective wives and their parents in the residence.

The decedent, although holding a job as a guard with a corporation, with the help of his family, planted practically the entire acreage to vegetables and garden produce, which were then sold to the public from a small aluminum sheet building which decedent erected adjacent to his home on the roadside. Seemingly, this business, which was carried on by the labor of his entire family, prospered, and, in the year 1951 or 1952, he erected a larger building adjacent to the roadside stand in which he continued to sell his garden produce. In addition to this, however, he added several lines of merchandise. He sold groceries, packaged meats, beer, wine, etc. The first floor of this concrete block building was occupied by his store, and the second floor was given over, rent free, to one of his sons and his family for living quarters. The other son continued to live with his family in the residence property.

The above review of the facts, pictures in a few words the way in which the Nagels lived and made their living during the years preceding the death of the master of the household. They all worked in conducting the business of growing crops and operating the store in which their home-grown vegetables were sold, together with other articles of merchandise as shown above. The boys, as well as the father, had outside jobs, but apparently the women were on duty when the occasions required. The father and the boys tilled the land, produced the crops, and helped sell them in the store.

It may be argued that, under the former statutes in this state, a business operation of the kind here depicted could not be said to be carried on in the curtilage, and could not be said to be property so connected with the mansion house as to allow a widow to take it, along with the residence, at the appraised value. However, the Legislature has enlarged the widow's rights. She may now take not only the "mansion house" and the land upon which it stands, but also "lots or farm land adjacent thereto and used in conjunction therewith as the home of the decedent."

We have, in the case before us, one entire tract of land, originally purchased as such; a residence located thereon

which provided a home and shelter for an entire family until a building was erected adjacent to the residence, which was used in part for living quarters by one of the sons and his family; the operation by the entire family of a farm or garden on the entire tillable tract, which supplied garden produce for sale by the family in a building erected adjacent to the residence for such purpose; and a partial support and maintenance of the families of the parents and children from the business activities conducted on the "lots or farm land" used in conjunction with the mansion house "as the home of the decedent."

In consideration of the factual situation here presented, we are of the opinion that the statute is broad enough to allow the appellant widow to prevail in this case.

We have been cited to the case of *In re Estate of Burgoon*, 80 Ohio App., 465, 76 N. E. (2d), 310.

In that case, it appears that two business blocks were located upon the same lot partly occupied by the mansion house. These buildings were rented to, and occupied by, strangers to the household. They were "used and occupied as a pool room and * * * as a restaurant and beer parlor" by the tenants of the decedent.

There, the decedent, for a consideration, had sold an interest in his real estate and had passed to the tenant a present interest in the land. See: *Brenner* v. *Spiegle*, 116 Ohio St., 631, 157 N. E., 491. The court in the *Burgoon case* properly held that, under such circumstances, the buildings and the land upon which they stood, were not used in conjunction with the mansion house as the home of the decedent.

A judgment will be entered modifying the judgments of the lower courts to include the entire tract sought to be purchased, and the cause will be remanded to the Probate Court for execution.

*Judgment modified and, as modified, affirmed.*

HUNSICKER, P. J., and STEVENS, J., concur.