WARREN, EXR., *v.* SHOEMAKER ET AL.

[Cite as Warren, Exr., v. Shoemaker, 4 Ohio Misc. 15.]

(No. 219952—Decided March 10, 1965.)

CONSTRUCTION OF WILL: Probate Court of Franklin County.

*Messrs. Lucas, Prendergast, Albright & Warren,* for the executor.
*Messrs. Porter, Stanley, Treffinger & Platt* and *Messrs. Lilley & Lilley,* for defendant Lula Shoemaker.
*Mr. Laurence A. Ramey* and *Mr. Ralph G. Smith,* for defendant North Broadway Methodist Church.

VAN HEYDE, J. This matter came on to be heard upon the petition of R. Rush Warren, Executor, for construction of will of decedent and instructions relative to distribution of the estate.

Defendants Lula Shoemaker, a specific legatee, and North Broadway Methodist Church, the residuary legatee, by the chairman of their board of trustees, filed waivers of service and entry of appearances. In addition, a separate answer was filed by the church's attorneys.

Upon consideration of the pleadings, the evidence presented, and the briefs of counsel, the court finds the following:

Finding of Facts

Mabel M. Pendleton, deceased, died testate January 12, 1964. Her last will and testament executed August 12, 1959, was duly admitted to probate by the Probate Court of Franklin County, Ohio, on January 22, 1964. Said will has been recorded in volume 214, page 749—Will Record, Probate Court, Franklin County, Ohio.

Letters testamentary were issued to plaintiff, executor R. Rush Warren, on January 22, 1964.

Defendant Lula Shoemaker is named as legatee in Item V and Item VI of the will of Mabel M. Pendleton, deceased.

The defendant, North Broadway Methodist Church, an Ohio corporation, not for profit, is the residuary legatee as provided for by item XXVI of decedent's last will and testament.

The bequest in item VI of the will of Mabel M. Pendleton reads:

"I give and bequeath to Lula Shoemaker all of the stock of the W. M. Ritter Lumber Company that I may own at the time of my death * * *."

Item XXVI of the will of Mabel M. Pendleton provides as follows:

"I give, devise and bequeath all the rest, residue and remainder of my estate to the North Broadway Methodist Church, or its successor, to have and to hold absolutely."

The will was executed by decedent Mabel M. Pendleton on August 12, 1959.

At time of execution of her last will and testament, Mabel M. Pendleton, the decedent, was the owner of 2148 shares of the common stock of W. M. Ritter Lumber Company.

The W. M. Ritter Lumber Company was at the time of the making of decedent's will, and had been for many years, engaged in the business of harvesting timber and manufacturing lumber products, particularly hard woods for use in housing, flooring, furniture fixtures and cabinets. It was the owner of substantial timber acreage in the southwest Appalachian area and operated approximately eight (8) sawmills. Its principal customers were manufacturers and wholesale and retail lumber yards.

On or about August 29, 1960, one year and seventeen days after the execution of decedent's will, the board of directors of the W. M. Ritter Lumber Company and the board of directors of the Georgia-Pacific Corporation entered into an agreement of merger between the companies, subject to the approval of stockholders of each company.

Upon the terms of the proposed merger agreement, each outstanding share of common stock of the W. M. Ritter Lumber Company would be exchanged for 1.6 shares of the common stock of Georgia-Pacific Corporation.

Upon the completion of the merger, all assets and liabilities of W. M. Ritter Lumber Company were to be carried on the books of Georgia-Pacific Corporation as assets and liabilities of said corporation.

Georgia-Pacific Corporation would constitute the surviving corporation and W. M. Ritter Lumber Company would no longer exist as a separate entity.

At the time of the proposed merger, Georgia-Pacific Corporation was, and for many years had been, engaged in the business of harvesting timber and the manufacturing of plywood, lumber and other wood products. Its principal centers of operation were on the west coast and the southwestern part of the United States. Its principal customers were industrial and wholesale users and distributors of plywood, lumber and wood products.

On or about September 30, 1960, the shareholders of each company approved the agreement of merger by a substantial majority vote.

Thereafter, the merger was completed pursuant to the agreement, and the stockholders of W. M. Ritter Lumber Company were requested by letter on or about October 4, 1960, to send their stock certificates to a designated transfer agent in exchange for the common stock of Georgia-Pacific Corporation.

The decedent, Mabel M. Pendleton, who had signed a proxy approving the merger agreement on September 9, 1960, transmitted her stock certificates representing 2148 common shares of W. M. Ritter Lumber Company to the transfer agent and was issued 3436 shares of Georgia-Pacific Corporation common stock in exchange.

Decedent received the exchanged shares, to wit: 3436 shares

common stock of Georgia-Pacific Corporation on or about October 17, 1960.

All of said Georgia-Pacific Common Shares were held by the decedent from October 17, 1960, to date of her death on January 12, 1964.

Decedent made no sales or disposition of said shares during the period October 17, 1960, to date of death.

Decedent, Mabel M. Pendleton, from time to time after the exchange of the shares involved, and prior to her death, received stock dividends of the Georgia-Pacific Corporation common shares representing an additional 468 shares.

At her death, decedent owned 3904 shares of common stock of Georgia-Pacific Corporation. She owned no stock of W. M. Ritter Lumber Company and no certificates representing shares of any kind of stock of the W. M. Ritter Lumber Company have been found.

Since the death of decedent Mabel M. Pendleton, the executor has received substantial cash and stock dividends of the common stock of Georgia-Pacific Corporation.

The above statements of fact bring us to the questions to be decided by the court.

Is the bequest to Lula Shoemaker in Item VI of decedent's last will and testament a specific bequest?

If so, was there an ademption because of the exchange of the W. M. Ritter Lumber Company stock for the common shares of Georgia-Pacific Corporation at the exchange ratio of 1.6 Georgia-Pacific Corporation common shares for each share of W. M. Ritter Lumber Company common stock? If there was not an ademption, then who is to receive the stock dividends on the Georgia-Pacific Corporation common stock from the date of exchange to decedent's death? The specific legatee or the residuary legatee?

Who is to receive the stock dividends and the cash dividends that have been received by the executor during his administration of the estate?

### Conclusion of Law

*Is the gift described in Item VI of decedent's last will and testament a specific bequest?*

It is the opinion of the court, and it so finds, that the gift described in Item VI of decedent's last will and testament was

a specific bequest. A specific bequest is a gift of a particular portion of a testator's personal estate described so as to distinguish it from other parts of the estate. *Nagel* v. *Wilcox, Exr.*, 104 Ohio App. 534.

*Is the specific bequest adeemed in this case?*

The court is of the opinion and so finds, that the specific bequest in this case is not adeemed because the 3436 exchanged shares of Georgia-Pacific Corporation common stock, found in decedent's assets represented a particular portion of her personal estate that was substantially the same as the 2148 shares of the W. M. Ritter Lumber Company common stock described in Item VI of decedent's last will and testament.

"Where the subject matter of a specific bequest is substantially the same as the item found upon the death of the testator, there is no ademption.

"The early cases on ademption usually dealt with the sale of blackacre or the death of my favorite horse." History of Ademption, 25 Iowa L. R. 290.

The law as to ademption of a specific bequest of stock was derived in the early English cases by drawing analogies to cases where the testator had bequeathed a certain horse or cow. *Clegg, Exr.,* v. *Lippold*, 68 Ohio Law Abs. 590, 602.

Modern business affairs, corporate business in particular, demand that the courts take a new approach in handling problems of ademption. A stock certificate, an intangible asset, in and of itself may be worthless. However, when it is an evidence of indebtedness or represents a share of ownership in corporate property, it has a new meaning. The stock certificate represents the holder's proportionate interest or ownership in a certain corporation.

Under the early ademption cases, if the horse or cow died, and was not found among the decedent's personal property at death, that was the end of the gift and it was adeemed.

In light of our modern commercial transactions, the same rules of destruction should not necessarily apply to certificates of stock. As in the case at hand, the shares described in Item VI of decedent's will were exchanged for the Georgia-Pacific shares at the rate of 1.6 shares of Georgia-Pacific for the W. M. Ritter Lumber Company shares.

The deposition of Frederick Kapp, counsel for the Georgia-

Pacific Corporation, reveals the fact that decedent's shares would have been exchanged in the merger agreement whether the decedent agreed to the merger or not. In the instant case, if the W. M. Ritter Lumber Company had been the surviving corporation instead of Georgia-Pacific, there would not have been "one peep" from the parties involved.

But for a "stroke of business magic" is this defendant, Lula Shoemaker, to be denied her legacy? This court does not believe this to be the case. This court followed all the evidence presented in this case. The court knows that decedent did not sell or transfer any of her personal property from the signing of her will to her death, save the exchange involved here.

Where the item found upon the death of the testator is substantially the same as that bequeathed, there is no ademption.

Another exception to the general rule that where a specific asset bequeathed has ceased to belong to the testator at the time of his death, the bequest is adeemed, is the rule that if the alteration is purely formal there is no ademption. This doctrine is known as "the substantial identity doctrine." *Goode* v. *Reynolds*, 208 Ky. 441, 271 S. W. 600, 63 A. L. R. 631.

The subject matter of ademption of securities involved in merger, reorganizations and reconstruction of corporate structures is not fully settled in Ohio courts.

However, several other American jurisdictions have dealt with the subject matter.

The annotation in 7 A. L. R. 2d 276, deals with the subject matter, at page 278:

"It has been quite uniformly held or recognized at least in the United States, that alteration in the corporate structure, or dissolution and reorganization of a corporation does not effect such a change in a bequest of shares of stock of such corporation as to cause a loss of the bequest, either by ademption or otherwise, the legatee being entitled to shares of stock, under the new set up, representing the stock of the original corporation which was the subject matter of the bequest."

While there is authority to the contrary, the majority of the cases in which the question arose because of a merger or consolidation of corporations, the bequest involved was not adeemed. 7 A. L. R. 2d 286.

"A specific bequest of stock was not adeemed by the act of a testator subsequently to his execution of his will in transferring his stock to a new company that acquired all the assets and outstanding shares of stock of the old corporation and issued to the testator the greater part of its stock."

Also see *In re Pierce* (1903), 91 N. Y. S. 2d 386, 25 R. I. 34, 54 A. 588; *In re Spears*, 271 N. Y. S. 110; *In re Kingsley's Will* (1946), 67 N. Y. S. 2d 464; *Gardner* v. *Gardner*, 72 N. H. 257; *Clegg, Exr.,* v. *Lippold*, 68 Ohio Law Abs. 590; *In re Mandelle's Estate*, 252 Mich. 375.

From an exhaustive research and study of the laws as they apply to ademption of shares of stock in corporations that have merged, reorganized, dissolved and set up new corporate structures, it is the opinion of this court that the majority of the courts would favor a rule against ademption. In the instant case, it is the opinion of this court that the exchange of W. M. Ritter Lumber Company stock for Georgia-Pacific Corporation common stock issued on October 17, 1960, to the decedent did not work an ademption.

This court, adopting the substantial identity doctrine, finds that the 3436 shares of Georgia-Pacific Corporation common stock received in exchange for decedent's 2148 W. M. Ritter Lumber Company common stock held by her at execution of the decedent's will, were substantially identical and therefore the specific bequest to Lula Shoemaker was not adeemed.

*The specific bequest NOT being adeemed—Who is to receive the dividends—subsequent to the initial issuance to decedent on October 17, 1960?*

This court is of the opinion, and so holds, that all dividends received subsequent to October 17, 1960, on the Georgia-Pacific Corporation common stock shall go to the residuary legatee, the North Broadway Methodist Church.

As a general rule, stock received as a stock dividend by a testator subsequently to the execution of the will does not go to the legatee with the principal stock, unless there is some indication in the will, or in the circumstances of the case, that it was within the general intention of the testator that it should do so. The declaration of a stock dividend by a corporation is nothing more than the capitalization of accumulated profits which otherwise would be paid or payable to the stockholders

in cash. As the legatee would not be entitled to receive the dividends when paid in cash, he is not entitled to receive them when they are reinvested in additional stock, unless something more appears than the mere fact that the new stock is derived from ownership of the old. 172 A. L. R. 364. Also see 10 A. L. R. 1326; 89 A. L. R. 1130 and 162 A. L. R. 169.

As a general rule, shares of stock received as a dividend by a testator after the execution of the will does not go to the legatee of the principal stock, unless there is some indication in the will, or in the circumstances of the case that it is within the general intention of the testator that it should do so. 56 Ohio Jurisprudence 2d, Wills, Section 601, page 131. See *Central National Bank, Exr.,* v. *Cottier,* 82 Ohio Law Abs 301, 304.

Merrick-Rippner's Ohio Probate Manual—T 93 (2), 1964 Suppl., reads:

"Stock dividends received after the execution of the will, will not go to the beneficiary of corporate stock in the absence of such an indication in the will itself or other relevant circumstances that it was the intention of the testator that the stock dividends follow the bequest; and where facts, plus the general character and tenor of the will and codicils preclude, in the court's opinion, any intent by the testator that stock dividends follow a bequest of certain stock, such stock dividends become part of the residuary estate."

It is therefore by the court ordered that the executor distribute to Lula Shoemaker, pursuant to Item VI of decedent's will, 3436 shares of Georgia-Pacific Corporation common stock; pursuant to Item XXVI of decedent's will, to North Broadway Methodist Church, stock dividends received by testator on said shares prior to testator's death and all cash and stock dividends on the Georgia-Pacific Corporation shares received by the executor during his administration of the estate.

*Judgment accordingly.*