DAY, ADMR., *v.* BROOKS ET AL.

(No. 630969—Decided March 27, 1967.)

Probate Court of Cuyahoga County.

*Mr. Lester L. Yoder*, for plaintiff.

*Mr. Clarence C. Fowerbaugh*, for defendant, the Salvation Army.

*Barbara G. Jacobson*, guardian ad litem for minor defendants.

*Messrs. Miller, Folk & Schutz*, for defendant, The Jones Home for Friendless Children.

*Messrs. McAfee, Newcomer, Hazlett & Wheeler*, for defendant, the Children's Aid Society.

*Catherine M. Durkin*, for Suit of William Day, an Incompetent Person.

*Messrs. Daus, Schwenger & Kottler*, for defendant, the Cleveland Christian Home for Children.

*Eileen Flynn*, for Trustee for Suit of Arlene Day, an Incompetent Person.

*Messrs. Thompson, Hine & Flory*, for defendant, the Children's Fresh Air Camp and Hospital of Cleveland.

*Mr. William B. Saxbe*, attorney general, for defendant, the state of Ohio.

ANDREWS, Chief Referee. This action is brought by the administrator *de bonis non* with the will annexed of the estate of Mrs. Margaret Jane Groh, deceased. Plaintiff asks for a construction of certain parts of the will and for a declaratory judgment and directions.

The testatrix died on June 29, 1961, and the will was admitted to probate on August 8, 1961. The petition was filed on September 21, 1962, and the case was referred to me on September 14, 1966.

Plaintiff seeks a determination by this court on six specific matters, each dealing with a particular item of the will. Because these matters are unrelated, it will be simpler to take them up separately without any prior summary of the will as a whole.

Of the large number of defendants, only nine have filed answers. As to the others, the allegations of the petition are to be taken as true. Section 2309.27, Revised Code.

Counsel for the nine answering defendants have expressed their willingness to submit the case to me without the introduction of evidence or a formal stipulation, upon the basis that the

facts alleged in the petition, most of which are matters of record, are true.

## I

The first question relates to Item III of the will, which reads:

"I give and bequeath to my brother, Walter Day, or in the event of his death prior to mine, or prior to that of his daughter, Arlene Day, then and in that event, to Catherine Carroll, the sum of Five Hundred Dollars ($500.00) in trust for the use and benefit of Arlene Day, daughter of Walter Day, during her lifetime; said sum and all income therefrom to be used for the care, maintenance, and support of said Arlene Day. Upon the death of said Arlene Day, if any portion of said trust fund then remains on hand, I give and bequeath the same to Walter Day, Father of Arlene Day."

Walter Day predeceased the testatrix, and his only surviving issue is his daughter, Arlene Day, an incompetent, but not under legal guardianship. Arlene Day is a patient at the Orient State Institute, Orient, Ohio.

Plaintiff wants to know whether the bequest of $500.00 should be paid to Catherine Carroll as trustee, for the use and benefit of Arlene Day, and he wants me to determine the purpose of the trust and to whom the residue, if any, of the trust estate should be paid after Arlene Day's death.

The language of Item III leaves no doubt about the intention of the testatrix to create a trust. See 5 Bowe-Parker, Page on Wills, Section 40.4, pp. 109-110 (1962). And the language as to purpose is definite enough to sustain the trust against a charge of indefiniteness, uncertainty, or vagueness. See 53 Ohio Jurisprudence 2d, Trusts, Section 68; *Homer* v. *Wullenweber* (1951), 89 Ohio App. 255, 45 Ohio Opinions 481, 101 N. E. 2d 229. The bequest should be paid to the designated trustee for the use and benefit of Arlene Day.

In asking us to determine the purpose of the trust, plaintiff evidently wants us to interpret the phrase, "care, maintenance, and support." The meaning is well expressed in the headnote to a Court of Appeals decision, which I quote:

"The legal sense and meaning of the testator's words 'care, maintenance and support' is the same as the understanding of

them in everyday life, with the single qualification that the recipient in each particular instance is to receive all those necessities that are required to sustain life in comfort in accordance with the beneficiary's station in life." *Hetzler* v. *Kah* (1945), 43 Ohio Law Abs. 383, 65 N. E. 2d 515. See 56 Ohio Jurisprudence 2d, Wills, Section 801, p. 312.

And the following quotation regarding the duty of a guardian to provide maintenance for his ward under certain circumstances throws further light on the question.

" 'Maintenance' in this respect means all necessary and requisite service conducive to the physical, moral, or mental well-being of the ward. This includes care, support, and nursing and medical services when necessary." 26 Ohio Jurisprudence 2d, Guardian and Ward, Section 93, p. 438.

In the case of *In re Vanderbilt's Estate* (Surr. Ct. 1927), 223 N. Y. Supp. 314, relating also to guardian and ward, the court stated, at page 316:

" * * * The word 'support' comprehends 'anything requisite to the housing, feeding, clothing, health, proper recreation, vacation, traveling expense,' or other proper cognate purposes included within the scope of the word."

The same meaning was given to the phrase, "care, support, and maintenance," used in a will, the court referring to the *Vanderbilt* decision. *In re Becker's Will* (Surr. Ct. 1941), 31 N. Y. S. 2d 482.

In my opinion the above authorities adequately show the purpose of the trust as manifested by the words "care, maintenance, and support."

Although in all probability the trust fund, being so small in amount, will be exhausted in a short time, it is necessary that we answer plaintiff's question about the disposition of any part of the fund which may, by chance, remain after Arlene Day's death.

It will be recalled that Walter Day, Arlene's father, is named as the remainderman of anything left in the trust fund after Arlene's death. Had Walter Day survived the testatrix, he would have owned a vested remainder in the fund, subject to defeasance by the expenditure of the fund for Arlene's needs. 2 Restatement, Property, Section 157, Comments, o, p, q, r, and Illustrations 14 and 16. However, as we know, Walter Day pre-

deceased the testatrix. Inasmuch as Walter Day was her brother and was survived by Arlene Day, his only issue, the so-called antilapse statute, Section 2107.52, Revised Code, applies. I quote the pertinent part.

"When a devise of real or personal estate is made to a relative of a testator and such relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, such issue shall take the estate devised *as the devisee would have done if he had survived the testator.*" (Emphasis added.)

Inasmuch as "the devisee," Walter Day, would have taken a vested remainder, subject to defeasance, his daughter Arlene takes the same estate. Upon her death, therefore, any residue of the trust fund becomes a part of Arlene Day's estate, and is payable to the executor or administrator thereof.

It is possible that the testatrix did not contemplate or desire this rather peculiar result,—peculiar in that Arlene can never receive her vested remainder in possession and enjoyment. But strange as the result may be, it seems to follow from the wording of the statute, and there is nothing in Item III of the will giving the slightest hint of any contrary intent.

When the testatrix died, Arlene became at one and the same time the life beneficiary of the trust fund and the remainderman of anything left in it after her death. I do not think that this constitutes a merger, in which the trust becomes swallowed up by the remainder. Under modern law, the question of whether or not there will be a merger of a lesser and greater estate under circumstances which might permit such a merger is largely a matter of intention and substantial justice. See 28 American Jurisprudence 2d, Estates, Sections 374-382. Although no Ohio case factually similar to the present situation has been found, our courts appear to uphold the general principle. See, for example, *Waitman* v. *Emmons* (1945), 76 Ohio App. 212, 31 Ohio Opinions 502, 43 Ohio Law Abs. 121, 61 N. E. 2d 912; *Citizens Savings Bank Co.* v. *Schutt* (1931), 40 Ohio App. 216, 9 Ohio Law Abs. 592, 178 N. E. 274; *Piper* v. *Lucey* (App. 1936), 21 Ohio Law Abs 661; see also 20 Ohio Jurisprudence 2d, Estates, Sections 183-186.

In the present case, neither intention nor substantial justice points to any reason for merging Arlene Day's equitable

life estate into her vested remainder. The testatrix, knowing of Arlene's incompetency, wanted the fund to be held in trust for her during her life. See *In re Hamburger's Will* (1924), 185 Wis. 270, 201 N. W. 267, 37 A. L. R. 1413; 50 A. L. R. 2d 1161 (1956) (dealing with a similar problem in connection with the *termination* of a trust). I hold that there will be no merger of the estates.

I cannot refrain from expressing my concern over the impracticability of establishing and operating a trust fund of only $500.00. Perhaps the interested parties and the court can work out a less expensive and more practical arrangement without doing violence to the wishes of the testatrix. Such a solution is provided for in the case of a guardianship. Section 2111.05, Revised Code.

## II

This question concerns Item IV of the will, by which the testatrix gives to her uncle, Arthur Day, the sum of $300.00. Arthur Day predeceased the testatrix and left no issue. Plaintiff asks whether this bequest has lapsed.

Since Arthur Day left no issue surviving the testatrix, the antilapse statute, Section 2107.52, Revised Code, is inapplicable, and the bequest lapses. 56 Ohio Jurisprudence 2d, Wills, Section 851. The amount of the bequest becomes a part of the residuum. 56 Ohio Jurisprudence 2d, Wills, Section 867; Bensing, The Ohio Anti-Lapse Statute, 28 University of Cincinnati Law Review 1 (1959); *Wooley* v. *Paxson* (1889), 46 Ohio St. 307, 24 N. E. 599.

## III

The third question raises problems of ademption and substitution. Item V of the will reads:

"I give and bequeath to my brother, Walter Day, twelve (12) shares of stock of The Bedford Savings & Loan Company."

As we know, Walter Day predeceased the testatrix, leaving as his sole issue his daughter, Arlene Day, an incompetent. In accordance with Section 2107.52, Revised Code, already referred to, she will take whatever property her father would have taken had he survived the testatrix, subject, of course, to the management of such property by a guardian to be appointed.

In 1958, The Bedford Savings & Loan Company transferred all its assets, subject to its liabilities, to The Citizens Federal

Savings & Loan Association of Cleveland. Each shareholder of The Bedford Savings & Loan Company received a savings account book issued by The Citizens Federal Savings & Loan Association in an amount equal to $450.00 for each share held in The Bedford Savings & Loan Company. (For the sake of brevity, I will sometimes refer to the institutions as "Bedford" and "Citizens," respectively.)

The opening entry in Mrs. Groh's savings account book (No. B 2198) was made on July 1, 1958, and was for $5,400.00. This represented twelve shares of Bedford at $450.00 a share.

The savings account book contains a statement that a savings account represents share interests in the Association, and that money invested in it will draw dividends as specified. The book contains a further statement that the institution is a mutual savings association and that all profits are paid as dividends to savings account holders or added to surplus for their protection.

Between August 12 and October 28, 1958, the decedent withdrew $600.00 from the account. Dividends credited to the account through January 1, 1961, totaled $473.61, and the balance on that date was $5,273.61.

Plaintiff asks the court to determine whether the bequest of twelve shares of The Bedford Savings & Loan Company stock was adeemed, and, if not, what amount, if any, "is represented by the deposit" in the savings account and is payable to Arlene Day, or, to be more accurate, to the guardian of her estate when appointed.

The trustee for suit for Arlene Day claims that the bequest of twelve shares of stock in Bedford was not adeemed, but, instead, that the savings account in The Citizens Federal Savings & Loan Association was substituted therefor, and that the balance of the account at the date of Mrs. Groh's death, i. e., $5,273.61, should pass in accordance with Mrs. Groh's intention, to Arlene Day.

The subject of ademption is closely related to the classification of legacies, and this field of the law has been recognized as difficult and confusing. See Paulus, Special and General Legacies of Securities—Whither Testator's Intent (1958), 43 Iowa Law Review 467; 6 Bowe-Parker, Page on Wills, Section 48.6, page 20 (1962).

A bequest of a given number of shares in a named corporation (as in Item V of the will) is usually regarded as a general, rather than a specific, legacy. 6 Bowe-Parker, Page on Wills, Section 48.6, page 21 (1962); *Clegg* v. *Lippold* (Prob. Ct. 1951), 68 Ohio Law Abs. 590, 123 N. E. 2d 549; *Hood* v. *Garrett* (1936), 53 Ohio App. 464, 5 N. E. 2d 937.

On the other hand, a reference to the number of shares of the corporation as belonging to the testator, as, for instance, "my twenty shares," or similar language, is ususlly held to render the legacy specific. 6 Bowe-Parker, Page on Wills, Section 48.6, page 23 (1962); *Bool* v. *Bool* (1956), 165 Ohio St. 263, 135 N. E. 2d 372; *Clegg* v. *Lippold, supra.*

Other factors may be important in classifying the legacy. Basically, we must try to discover the intention of the testator, to be gathered from the entire will. *Shaw* v. *Shaw* (1928), 32 Ohio App. 168, 167 N. E. 611; *Clegg* v. *Lippold, supra; In re Blackmun's Estate* (1950), 98 Cal. App. 2d 314, 220 P. 2d 30; 6 Bowe-Parker, Page on Wills, Section 48.6, pages 21, 24 (1962).

In the absence of something showing a contrary intent, the bequest of twelve shares of stock of The Bedford Savings & Loan Company is a general bequest. There is nothing in the will showing a contrary intent. True, Item XII gives the bequest a preferred position in case abatement is necessary due to a shortage of assets. But I do not think that such a provision sufficiently indicates an intention to take the bequest out of its ordinary category. After all, a testator has a perfect right to give priority to a general bequest in case of abatement if he wants to do so. See Section 2107.54, Revised Code.

As a general proposition, the extinction of the subject matter of a specific legacy adeems the legacy, and it has been said that only a specific legacy may be thus adeemed. *Bates* v. *Bates* (1943), 41 Ohio Law Abs. 485, 59 N. E. 2d 155; 6 Bowe-Parker, Page on Wills, Section 54.3 (1962); 56 Ohio Jurisprudence 2d, Wills Section 873, page 402.

The latter statement is not wholly correct, for even in the case of a general legacy, the extinction of the corporation and the elimination of its stock, without any substitution therefor, has been held to constitute a "failure" or ademption of the general bequest. See 22 A. L. R. 2d 457 at 468 (1952), referring also to some cases *contra.*

In any event, in a situation like the present one, where something has been substituted for the extinguished stock, it does not matter whether the bequest is specific or general, so far as ademption is concerned. *Pope* v. *Hinckley* (1911), 209 Mass. 323, 95 N. E. 798; *Pruyn* v. *Sears* (1916), 161 N. Y. Supp. 58; see 7 A. L. R. 2d 276 (1949).

In considering whether the new security may be substituted for the original bequest, identity (or traceability) and intent appear to be of major importance. See *Clegg* v. *Lippold* (Prob. Ct. 1951), 68 Ohio Law Abs. 590, 123 N. E. 2d 549; *Warren* v. *Shoemaker* (Prob. Ct. 1965), 4 Ohio Misc. 15, 33 O. O. 2d 20, 207 N. E. 2d 419; 7 A. L. R. 2d 276 (1949); 96 Corpus Juris Secundum, Wills Section 1177 (g) (2), page 999.

It is unnecessary to enter into a discussion of the many cases wherein the original stock bequeathed has been extinguished by reason of dissolution, reorganization, merger, and the like, and a different security has been substituted. The two Ohio cases cited immediately above, and the cases annotated in 7 A. L. R. 2d 276 (1949), present excellent examples of various factual situations.

In the instant case, the extinguished Bedford stock is clearly traceable into the "share interests" in The Citizens Federal Savings & Loan Association. And it is equally clear that the testatrix intended the "share interest" in Citizens, as represented by the savings account, to be a substitute for the twelve shares of Bedford. It would be wholly unreasonable to believe that the testatrix intended her bequest of Bedford stock, given a preference by her in case of abatement, to be eliminated by the transaction which took place between Bedford and Citizens.

The testatrix had complete control over the account during her lifetime, and it is reasonable to suppose that she wished the legatee of this bequest to have the balance on deposit in the account at the time of the death of the testatrix. I hold that Arlene Day (through a guardian to be appointed) is entitled to that balance, namely, $5,273.61.

Moreover, since the account is a substitute for the twelve shares of Bedford, she is likewise entitled to ownership of the account and delivery of the savings account book to her appointed guardian, just as she would be entitled to the twelve shares of Bedford if they were still in existence.

A complication arises with respect to the dividends credited to the account between the date of death of the testatrix and the date upon which the administrator transfers the account to Arlene Day's guardian. The trustee for suit for Arlene Day does not expressly claim these dividends, but the question of their disposition is raised indirectly by the plaintiff, who wants to know what amount is payable to Arlene Day, and how the estate should be distributed.

Had no merger or similar transaction taken place, and had the twelve shares of Bedford been owned by the testatrix when she died, the problem would have been comparatively simple. It appears to be well settled that in the case of a general bequest of stock, dividends accruing between the date of the testator's death and delivery of the stock to the legatee (there being no undue delay in such delivery) become a part of the general estate or residuum, and do not go to the legatee of the stock. 6 Bowe-Parker, Page on Wills Section 59.15, 59.18 (1962); *Hood* v. *Garrett* (1936), 53 Ohio App. 464, 5 N. E. 2d 937; *In re Estate of Gamble* (Prob. Ct. 1966), 8 Ohio Misc. 314, 220 N. E. 2d 621; 17 Western Reserve Law Review 894, 897 (1966); see also *Warren* v. *Shoemaker* (Prob. Ct. 1965), 4 Ohio Misc. 15, 33 O. O. 2d 20, 207 N. E. 2d 419, holding the same way for a *specific* bequest of stock.

The complication in the instant case arises from the fact that the substituted "share interest" in Citizens consists of a savings account, which, had it been the original subject of the bequest, would have been a specific legacy. See 6 Bowe-Parker, Page on Wills Section 48.5, page 18 (1962). And in the absence of a provision to the contrary in the will, accretions from a specific legacy accruing after the testator's death go to the specific legatee. 6 Bowe-Parker, Page on Wills Sections 59.15, 59.17, 59.18 (1962); *Hood* v. *Garrett* (1936), 53 Ohio App. 464, 5 N. E. 2d 937; compare *Warren* v. *Shoemaker* (Prob. Ct. 1965), 4 Ohio Misc. 15, 33 O. O. 2d 20, 207 N. E. 2d 419.

Thus, by reason of the peculiar factual situation, we are faced with a dilemma. It seems to me, however, that because the original bequest was general, we should adopt the rule governing accretions in the case of general bequests. The fortuitous circumstance that as a result of the merger there came into existence a specific subject matter, should not blind us to the

fact that the bequest, as written in the will, was general. We would be doing a disservice to other legatees were we to present to Arlene Day the dividends credited to the account between the date of death of the testatrix and the transfer of the account to Arlene Day (or her guardian),—dividends to which she would not be entitled had the twelve shares of Bedford stock remained in existence.

I hold, therefore, that the amount of the dividends credited to the account (B 2198) in The Citizens Federal Savings & Loan Association of Cleveland between the date of Mrs. Groh's death and the date of transfer of the account by plaintiff to Arlene Day's guardian, passes into the general estate or residuum, and does not belong to Arlene Day.

If this removal of the dividends from the savings account seems peculiar, it is only because of the extraordinary factual situation, whereby the general bequest of Bedford shares of stock was transformed into share interests represented by a savings account, which is ordinarily a specific legacy.

## IV

Item IX of the will reads as follows:

"I hereby give and devise to all of my brothers who shall be living at the time of my decease, the sum of Three Hundred Dollars ($300.00) each."

All Mrs. Groh's brothers predeceased her. All left issue surviving her. Plaintiff wants to know whether, by reason of the prior death of the brothers, the bequests are "null and void," and if not, to whom and in what proportions the bequests shall be distributed.

This brings us once more to a consideration of Section 2107.52, Revised Code, the so-called antilapse statute. In the interest of clarity, I will again quote the pertinent part.

"When a devise of real or personal estate is made to a relative of a testator and such relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, such issue shall take the estate devised as the devisee would have done if he had survived the testator."

There is nothing in the statute prohibiting a testator from preventing its operation if he wants to, and its operation must yield to his contrary intent, properly manifested.

I can think of no clearer language than that in Item IX for

showing such a contrary intent. The testatrix does not devise $300.00 to each of her brothers, but only to those who are living at the time of her decease. The bequests to the brothers are clearly conditioned upon survivorship.

The intention to make the gifts conditional is further evidenced by comparing this item with two other items in the will. Item IV makes a pecuniary gift to Mrs. Groh's uncle, Arthur Day; and Item V gives the twelve shares of stock of The Bedford Savings & Loan Company to her brother, Walter Day. No condition is attached to either bequest. Under such a provision it is obvious that if the legatee dies leaving issue, the issue take under the antilapse statute. But to say that the antilapse statute operates also in Item IX, is to disregard completely the conditional words, "who shall be living at the time of my decease," or to hold that the statute prevents them from having any effect.

In stating that lapse statutes apply to class gifts unless a contrary intent of the testator is found from additional language or circumstances, the Restatement of Property has the following to say where the class gift consists of a sum in gross:

"Whenever the conveyance in terms is in favor of those of the class 'who survive' the testator, or in other words of similar import, this denotes the intent of the testator that the share of any 'possible taker' who dies before the testator dies is to go over to those 'possible takers' who survive the testator, and the requisite contrary intent exists." 3 Restatement, Property Section 298, Comment d.

The same principle is logically applicable to a case where each member of the designated group is to get a specified amount, for the words showing the condition of survivorship are equally present. The only difference is that in the latter case the lapsed legacies become a part of the residuary estate.

I hold that a condition of survivorship was attached by the testatrix to the bequests in Item IX, and that she had a perfect right to attach such a condition and thereby prevent the operation of the antilapse statute. Consequently, since none of her brothers survived her, the bequests lapsed and are part of the residuum.

*Gale* v. *Keyes* (1933), 45 Ohio App. 61, 186 N. E. 755 is not in point.

*Detzel* v. *Nieberding* (Prob. Ct., Hamilton County, 1966), 7 Ohio Misc. 262, 219 N. E. 2d 327, which holds that the statute operates despite the words, "provided she be living at the time of my death," relates to an individual bequest to one person. In this, and in other respects, it is distinguishable on its facts from the instant case. For that reason, I refrain from entering into an analysis of the *Detzel case* or expressing any opinion about it.

## V

By Item XI the testatrix gives eight $25.00 United States Savings Bonds, Series E, to Jeanette Day; eight to Eleanor Day; four to Billy Day; and one each to twenty-nine named persons. This adds up to forty-nine bonds. At her death the testatrix owned only forty-one bonds of the stated issue and denomination.

Plaintiff asks the court to determine how and to whom the $25.00 United States Savings Bonds, Series E, should be distributed, in view of the shortage of such bonds in the estate. In passing, it should be noted that the $25.00 represents the maturity value of each bond.

From what was said in connection with the third question, it is clear that the bequests of these bonds are general, rather than specific. See, again, 6 Bowe-Parker, Page on Wills Section 48.6, page 21 (1962). And contrast these bequests with the bequest in Item X, where two $50.00 bonds, *each designated by its serial number*, are bequeathed to a named beneficiary.

Since the legacies are general, they must be satisfied notwithstanding that at her death the testatrix owned less than the total number of bonds bequeathed. See 22 A. L. R. 2d 457 (1952). These bonds are readily obtainable.

I therefore direct the plaintiff to carry out the provisions of Item XI, purchasing the number of bonds necessary to make up the shortage.

## VI

Item XIII of the will gives and devises the rest and residue of the estate, share and share alike, to five named charitable institutions.

One of the institutions is the Children's Aid Society, whose address as given in the will is 19427 Detroit Avenue, Cleveland, Ohio. Actually, the address of this organization is 10427 De-

troit Avenue. It is obvious that in transcribing the will, a mistake was made in the address, and that the testatrix intended the named institution to be one of the five residuary beneficiaries. The slight error in the address is immaterial. See 95 Corpus Juris Secundum, Wills Section 687, page 1012. I hold that the Children's Aid Society, 10427 Detroit Avenue, Cleveland, Ohio, is the legatee.

With reference to another of the five beneficiaries, there is a discrepancy in both the name and the address. In Item XIII of the will, this beneficiary is designated as Jones Home, 3518 East 25th Street, Cleveland, Ohio. There is a Jones Home for Friendless Children located at 3518 West 25th Street, Cleveland, Ohio. This is listed in the Greater Cleveland telephone directory as Jones Home for Children. There is no other Jones Home in the telephone directory. I am satisfied that the intended beneficiary is the Jones Home for Friendless Children, at 3518 West 25th Street, and I so hold. See 4 Bowe-Parker, Page on Wills Section 34.39 (1961); 95 Corpus Juris Secundum, Wills Section 687, page 1012, cited *supra*. It is noteworthy that no party to this proceeding disputes these bequests.

Conclusions of Law

1. Re question 1 of the petition, Item III of the will.

The bequest of $500.00 should be paid to Catherine Carroll, in trust for the use and benefit of Arlene Day. The trustee is to use the trust fund, both principal and income, for the care, maintenance, and support of Arlene Day, as defined and explained in this opinion. Arlene Day has a vested remainder in such trust fund, subject to defeasance by expenditure. Any amount remaining in the trust fund (including both principal and income) at the death of Arlene Day, becomes a part of her estate and is payable to the executor or administrator thereof.

2. Re question 2 of the petition, Item IV of the will.

The bequests to the decedent's uncle, Arthur Day, lapses, and becomes part of the residuum.

3. Re question 3 of the petition, Item V of the will.

Arlene Day, through her guardian, is entitled to the balance in account number B 2198 in The Citizens Federal Savings & Loan Association of Cleveland, at the time of the death of the testatrix, namely $5,273.61. The account is now in the name of Estate of Margaret Jane Groh.

Arlene Day is also entitled to ownership of the account, subject to her guardianship; and the savings account book should be delivered to her guardian.

Dividends credited to the account between the date of Mrs. Groh's death and the date of transfer of the account by plaintiff to Arlene Day's guardian, are part of the residuum, and do not belong to Arlene Day.

4. Re question 4 of the petition, Item IX of the will.

The bequests to all the brothers of the testatrix living at the time of her decease were conditioned upon survivorship. Since all the brothers predeceased the testatrix, the bequests have lapsed and the amounts thereof are part of the residuum.

5. Re question 5 of the petition, Item XI of the will.

The bequests of the United States Savings Bonds, Series E, are general bequests. The bequests must therefore be satisfied and carried out by plaintiff. Plaintiff must purchase the bonds necessary to make up the shortage, in order to carry out in full the terms of Item XI.

6. Re question 6 of the petition, Item XIII of the will.

The Children's Aid Society, 10427 Detroit Avenue, Cleveland, Ohio; and the Jones Home for Friendless Children, 3518 West 25th Street, Cleveland, Ohio, are two of the residuary legatees under Item XIII of the will, and each is entitled to its share of the residuary estate in accordance therewith.